IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN INTERSCHOLASTIC ATHLETIC
ASSOCIATION,

        Plaintiff,

    and

AMERICAN-HIFI, INC., a/k/a When We Were
Young (WWWY), WKOW TELEVISION, INC.,
WAOW-WYOW TELEVISION, INC., WXOW-
WQOW TELEVISION, INC., FOX SPORTS NET
NORTH, LLC, VISUAL IMAGE PHOTOGRAPHY,
INC.,

        Plaintiffs pursuant to Wis. Stats.
        § 803.03,

    v.

GANNETT CO., INC. and WISCONSIN
NEWSPAPER ASSOCIATION, INC. (WNA),

        Defendants.

Case No. 09-CV-155

---

## NOTICE OF REMOVAL BY DEFENDANTS

---

       Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendants Gannett Co., Inc. (Gannett)

and Wisconsin Newspaper Association, Inc. (WNA), file this Notice of Removal to remove this

civil action from the Circuit Court of Portage County, Wisconsin, where it was filed as Civil

Action No. 08-CV-629, to the United States District Court for the Western District of Wisconsin,

and state as follows:

       The action underlying this notice is a complaint for a declaratory judgment whereby

Plaintiff Wisconsin Interscholastic Athletic Association (WIAA) seeks a declaration of

"exclusive ownership rights" in high school athletic tournaments it alleges to organize, supervise

and sponsor.  WIAA has additionally joined as necessary parties certain contractual parties to which WIAA alleges it "granted" exclusive production and distribution rights to recordings or broadcasts of these tournaments.

Removal is appropriate in this case because Plaintiff's right to relief under state law—a declaration of ownership rights in depictions of sporting events created by third parties—is preempted by the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (Copyright Act).

## SUBJECT MATTER JURISDICTION

1.      Plaintiff's Complaint is properly removable to federal court because it seeks a declaratory judgment based on a "substantial, disputed question of federal law" and the action could have been commenced in federal court.  *See* 28 U.S.C. § 1441(a); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 13, 19 (1983) (citations omitted).

2.      Where a complaint is based on federal law, but fails to state a federal cause of action only through artful pleading, removal is nonetheless appropriate.  *See Franchise Tax Bd.*, 463 U.S. at 13; *Mattel v. Bryant*, 441 F. Supp. 2d 1081, 1092 n. 12 (C.D. Cal. 2005) ("under the artful pleading rule a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint") (citations omitted).

3.      The Copyright Act completely preempts all state law relief, whether legal or equitable, for claims involving rights "that are equivalent to any of the exclusive rights within the general scope of copyright" for subject matter within the Copyright Act.  17 U.S.C. § 301 (preempting state law claims for works created after January 1, 1978); *Mattel*, 441 F. Supp. 2d at 1092.  One of Congress' purposes in preempting all state law claims in subject matter falling within the scope of the Copyright Act "is to prevent states from giving special protection to

2

works of authorship that Congress has decided should be in the public domain." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996).

4.    Purported state-law claims completely preempted by the Copyright Act are considered as arising under federal law from their inception.  *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 24 (1983).

5.    Broadcasts and other depictions of athletic events are within the subject matter protected by the Copyright Act.  *See Nat'l Basketball Assoc. v. SportsTeam Analysis and Tracking Systems, Inc.*, 105 F.3d 841, 847-48 (2d Cir. 1997).  And the question of whether the athletic competition itself is protected by copyright arises under federal law.  *Id*. at 846-47.

6.    The exclusive rights covered by the Copyright Act are the right to reproduce, prepare derivative works, distribute copies, and perform the copyrighted work.  17 U.S.C. § 106; *see also Allied Artists Pictures Corp. v. Rhodes*, 496 F. Supp. 408, 443 (S.D. Ohio 1980) (discussing House of Rep. committee notes and treatise to conclude Copyright Act extends to prohibitions of reproduction, performance, distribution and display of covered works).

7.    Claims arising under the Copyright Act should not be confused with contract claims.  Through the Copyright Act, Congress created exclusive rights enforceable against the world.  *ProCD*, 86 F.3d at 1454.  Enforcement of these rights sounds in federal copyright law.  *See id.*  Contract claims, on the other hand, are generally binding only on the parties to the contract; strangers not in privity may do as they will.  *Id.*

8.    WIAA states that it is a voluntary association of Wisconsin high schools which organizes, supervises and sponsors the athletic tournaments of its member schools.  Complaint, ¶¶ 1, 12.  WIAA further states that it has "granted" media rights consisting of production,

broadcast, telecast, photography and distribution to the plaintiffs joined as necessary parties in the action.  Complaint, ¶¶ 2-4, 8-11.

9.      WIAA, though artfully avoiding the use of terms of art under copyright law, is seeking a declaration of ownership rights in a subject matter within the scope of the Copyright Act – the exclusive right to broadcast or otherwise depict athletic events.  The rights asserted by WIAA are clearly "equivalent" to the rights of reproduction, performance, distribution or display defined by the Copyright Act.  The WIAA alleges that its rights are "exclusive ownership rights" that entitle it to "control the transmission, internet [sic] stream, photo, image, film, videotape, audiotape, writing, drawing or other depiction or description of any game, game action, game information, or any commercial used [sic]" of athletic events it sponsors.  Complaint, ¶¶ 13, 16.

10.     WIAA's allegation that *The Post-Crescent* newspaper violated its rights when it streamed a tournament game without "permission" and despite having been given "notice" of WIAA's "exclusive ownership rights" is nothing more than an artfully pleaded allegation of copyright infringement.  Complaint, ¶¶ 13-14.  This allegation is the basis for WIAA's choice of venue.  Complaint, ¶ 14.  It is clear from the face of the Complaint that WIAA seeks a declaration of extracontractual "exclusive ownership rights" valid against the world.

11.     WIAA's rights to control depictions of athletic events as pleaded in this Complaint, if any such rights exist, sound in federal copyright law.  In fact, WIAA neither cites nor pleads any state law basis for its purported extracontractual and "exclusive" rights.

12.     For this reason, Plaintiff's Complaint necessarily raises federal questions that are actually disputed and substantial.  Accordingly, removal is proper under federal law since this is a civil action brought in state court over which the federal court has original jurisdiction based on the existence of a substantial federal question.  *See* 28 U.S.C. § 1331; *see id.* § 1441.

### THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

13.     The prerequisites for removal under 28 U.S.C. § 1441 have been met.

14.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) in that it is being filed within thirty (30) days after the first receipt by a defendant of a copy of the Complaint.  Gannett and WNA received constructive knowledge of the Complaint on February 23, 2009.  On that date, their attorneys received an electronic copy of the Complaint from Plaintiff's counsel.

15.     Plaintiff executed service of the Complaint on both defendants on February 25, 2009.  A copy of the Complaint is attached.  (Exhibit A)

16.     Both defendants, Gannett and WNA, consent to the removal of this action.

17.     Pursuant to 28 U.S.C. § 1446(d), a copy of this removal petition is being served on all counsel of record and the clerk of the Circuit Court of the State of Wisconsin, in and for Portage County.  (Exhibit B)

18.     Removal to the United States District Court for the Western District of Wisconsin is appropriate because this action is being removed from the Circuit Court of Portage County, Wisconsin, which is located within the Western District of Wisconsin.

19.     By removing this action to this Court, neither Gannett nor WNA waive any defense available to it.

20.     If any question arises as to the propriety of the removal of this action, Gannett and WNA request the opportunity to present a brief and oral argument in support of their position that this case is removable.

WHEREFORE, the defendants Gannett and WNA remove this action from the Circuit Court of Portage County, Wisconsin, to the United States District Court for the Western District

of Wisconsin, and request that no further proceedings be had in the Portage County Circuit

Court.

Dated this 17th day of March, 2009.

s/ _____
Robert J. Dreps, State Bar No. 1006643
Monica Santa Maria, State Bar No. 1056390
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI  53701-2719
Phone:   608-257-3911
Fax:      608-257-0609
Email:   rdreps@gklaw.com

Attorneys for Defendants, Gannett Co., Inc. and
Wisconsin Newspaper Association, Inc.

3590500_1

STATE OF WISCONSIN          CIRCUIT COURT          PORTAGE COUNTY

WISCONSIN INTERSCHOLASTIC
ATHLETIC ASSOCIATION
5516 Vern Holmes Drive
Stevens Point, WI 54481,

        Plaintiff,

    and

AMERICAN-HIFI, INC.
a/k/a When We Were Young (WWWY)
a Wisconsin Corporation,
501 Moravian Valley Road
Waunakee, WI 53597,

WKOW TELEVISION, INC.
5727 Tokay Boulevard
Madison, WI 53719,

WAOW-WYOW TELEVISION, INC.
1908 Grand Avenue
Wausau, WI 54403,

WXOW-WQOW TELEVISION, INC.
3705 County Highway 25
La Crescent, MN 55947

FOX SPORTS NET NORTH, LLC,
10201 West Pico Boulevard
Building 103, Room 3152
Los Angeles, CA 90064

VISUAL IMAGE PHOTOGRAPHY, INC.
W63 N582 Hanover Avenue
Cedarburg, WI 53012,

      Plaintiffs pursuant to Wis. Stats. §803.03,

   vs.

GANNETT CO., INC.
d/b/a The Post-Crescent
7950 Jones Branch Drive
McLean, VA 22107,

COMPLAINT

Case No.: 08-CV- 629

Circuit Court Portage County, Wis.
FILED

DEC 0 5 2008

BERNADETTE A. FLATOFF
CLERK OF COURTS


EXHIBIT
A

WISCONSIN NEWSPAPER ASSOCIATION, INC. (WNA)
3822 Mineral Point Road
P.O. Box 5580
Madison, WI 53705,

                Defendants.

---

NOW COMES the plaintiff, Wisconsin Interscholastic Athletic Association (WIAA), by

its attorneys, Anderson, O'Brien, Bertz, Skrenes & Golla, by Gerald M. O'Brien, and for its

Complaint against the defendant hereby requests a declaratory judgment as hereinafter pleaded:

1. That the WIAA is a voluntary unincorporated association made up of high schools in

the state of Wisconsin, with its principal place of business at 5516 Vern Holmes Drive, Stevens

Point, WI 54481.

2. That upon information and belief, American-HiFi, Inc. (WWWY) is a Wisconsin

corporation with its principal place of business at 501 Moravian Valley Road, Waunakee, WI

53597, and engaged in the business of television productions.  It is being joined in this action

because, it claims an interest in the subject matter of this action and as a necessary party pursuant

to Wis. Stats. §803.03.

3. That upon information and belief, WKOW Television, Inc., WAOW-WYOW

Television, Inc. And WXOW-WQOW Television, Inc. ("The WIAA State Network") are

Wisconsin corporations engaged in the business of producing television programs.  They are

being joined to this action because they claim an interest in the subject matter of this action and

as a necessary party pursuant to Wis. Stats. §803.03.

2

4. That upon information and belief, Fox Sports Net North, LLC (FSN-N) is a LLC, with its principal place of business at 10201 West Pico Boulevard, Building 103, Room 3152, Los Angeles, California 90064, engaged in the business of telecasting. It is being joined to this action because, it claims an interest in the subject matter of this action and as a necessary party pursuant to Wis. Stats. §803.03.

5. That upon information and belief, Gannett Co, Inc. Is a corporation with its principal place of business at 7950 Jones Branch Drive, McLean, Virginia 22107, engaged in the business of publishing newspapers, including the Post-Crescent in Appleton, Wisconsin. That it does substantial business in Wisconsin in that it publishes, distributes and collects revenue from the sale of newspapers in Wisconsin.

6. That upon information and belief, Wisconsin Newspaper Association, Inc. (WNA) is a non-stock corporation organized in the state of Wisconsin, with its principal place of business located at 3822 Mineral Point Road, Madison, Wisconsin 53705, engaged as described in its By-Laws, a copy of which is attached hereto and marked as Exhibit A. That it has forwarded a letter from its attorneys, Godfrey & Kahn, dated October 31, 2008 to the WIAA, a copy of which is attached here to and marked as Exhibit B, challenging the WIAA's right to control internet streaming and challenging the WIAA's authority to grant exclusive coverage rights to its sponsored athletic events.

7. That upon information and belief, Post-Crescent publishes and distributes newspapers and is located at 306 West Washington Street, P.O. Box 59, Appleton, Wisconsin 54911.

3

8. That on April 26, 2005, the WIAA granted certain production rights and distribution rights to WWWY for valuable consideration and a copy of that agreement is attached hereto and marked as Exhibit C.

9. That on March 20, 2004, the WIAA granted certain television broadcast rights to the WIAA State Network for valuable consideration and a copy of said agreement is attached hereto and marked as Exhibit D.

10. That on July 13, 2007, the WIAA granted certain telecast rights to FSN-N for valuable consideration and a copy of that agreement is attached hereto and marked as Exhibit E.

11. That on October 21, 2008, the WIAA provided to Visual Image Photography, Inc. certain photography rights for valuable consideration and a copy of such agreement is attached hereto and marked as Exhibit F.

12. That the WIAA organizes, supervises and sponsors the athletic tournament games of its member high schools. That it has all rights and ownership in those media rights, including newspaper, television, radio and internet, and has the authority to assign all or portions of those rights to third parties, such as the plaintiffs joined pursuant to Wis. Stats. §803.03.

13. That the WIAA has given notice to all public media in the state of Wisconsin of its exclusive ownership rights, and of its general policies, with respect to radio, television, cable, photography and internet limitations as provided in a portion of its 2008-09 media policy reference guide, a copy of a portion of which is attached hereto and marked as Exhibit G. That in addition, it has met with representatives of all public news media in the state advising them of its exclusive ownership rights and its limited access to them by others.

4

14. That on November 8, 2008, the Post-Crescent newspaper, without permission of the WIAA, live streamed a tournament football game between Appleton North High School and Stevens Point Senior High School in the city of Stevens Point, Portage County, Wisconsin, and streamed it, live, on the internet on its web page. That it is the position of the WIAA that such streaming was in violation of the exclusive rights and ownership of the WIAA. That because its action took place in Portage County, Wisconsin, Portage County is the proper place of venue for this action.

15. That the football game constituted an entertainment event and not a governmental function. That the WIAA did receive compensation for assignment of the rights to live stream, video and web-cast the event. That such compensation assisted in offsetting the cost of producing such event.

16. That this action is commenced for the purpose of having the court enter an order declaring the rights of the WIAA to control the transmission, internet stream, photo, image, film, videotape, audiotape, writing, drawing or other depiction or description of any game, game action, game information, or any commercial used of the same of an athletic event that it sponsors, and that it has the right to grant exclusive rights to others, including the plaintiffs named pursuant to Wis. Stats. §803.03 for tournament events that it sponsors.

WHEREFORE, the WIAA requests judgment declaring that it has ownership rights in any transmission, internet stream, photo, image, film, videotape, audiotape, writing, drawing or other depiction or description of any game, game action, game information, or any commercial used of the same of an athletic event that it sponsors, and that it has the right to grant exclusive

5

rights to others, including the plaintiffs named pursuant to Wis. Stats. §803.03 and, further

requests such other relief that the court deems appropriate, together with its costs, disbursements

and attorneys fees.

Dated this ⟍⟍ day of December, 2008.


ANDERSON, O'BRIEN, BERTZ, SKRENES & GOLLA


By _____

Gerald M. O'Brien
A Member of the Firm
Attorneys for Plaintiff
1257 Main Street, P.O. Box 228
Stevens Point, WI 54481-0228
Telephone: 715/344-0890
State Bar No.: 1007340

6

Current

# WNA BYLAWS

Adopted October 5, 1979
Amended January 21, 1994
Amended January 22, 1999
Amended January 31, 2001
Amended February 2, 2006

## ARTICLE I  NAME

The name of this association shall be the Wisconsin Newspaper Association, Inc.

## ARTICLE II  PRINCIPAL PLACE OF BUSINESS

The principal office of the association shall be located in the County of Dane, State of Wisconsin, or such other place as may be established from time to time by vote of the association membership.

## ARTICLE III  OBJECTS AND PURPOSES

The object of this association shall be to protect, promote, foster and advance the interest of its newspaper publishing members in Wisconsin; to increase the market position of newspapers; to improve the conditions under which newspapering is carried on; to protect newspapers against unfair and unjust burdens; to cultivate professional journalism and a high regard for journalistic principles among its members; to place the ethics of newspapers upon a higher plane; to collect and disseminate pertinent data relating to newspapers; to support other organizations, foundations and/or corporations whose goals and functions are in accord with this association; and that this corporation shall not have power to issue certificates of stock or to declare or pay dividends, its purpose not being for pecuniary profit of its members.

## ARTICLE IV  MEMBERSHIP

**Section 1.**  The membership of this association shall be of eight classifications: Business, Limited Business, Associate Business, Affiliate, Sustaining, Honorary and Golden, and Campus.

(A)  Business Membership:  Any individual, partnership, corporation, or other form of enterprise engaged in newspaper publishing in Wisconsin may become a Business Member.

(1)  A publication to qualify for newspaper membership in the Wisconsin Newspaper Association shall have been published at least weekly in the state of Wisconsin for at least two years as of the start of the year for which the directory is published; shall have a bona fide paid circulation to actual subscribers equivalent to at least 50% plus one of its distribution; shall be a newspaper of general character and interest, as contrasted with
publications issued to supply information on certain subjects of special interest to particular groups; shall devote at least 25% of its content to news and editorial matter.

(2)  Whenever a Business Membership is held in the name of a partnership or corporation, one individual representing the firm shall exercise the voting power of the membership and the name shall be certified with the secretary of the association.  The voting member of the association shall be the publisher of record or a person designated by the publisher.

(B)  Limited Business Membership:  Any individual, partnership, corporation or other form of enterprise engaged in newspaper publishing in Wisconsin may become a Limited Business Member, provided they are not eligible for a regular Business Membership because their publication does not qualify under Section A above as to length of publication.  Said Limited Business Membership shall be based on all qualifications stated in Section 1 (A) with this one aforementioned exception.  Publication must be regularly issued for at least one year prior to application for membership.  A Limited Business Member must apply for full membership after completing two continuous years of publication.

2/2/06



(C)  Associate Business Membership:  Any individual, partnership, corporation or other form of enterprise engaged in publishing a special interest newspaper including trade or free newspaper is eligible to become an Associate Business Member.  These special interest publications must contain 25% news at least 50% of the time and be published at least once a month.

(D)  Affiliate Membership:  Affiliate Membership may be granted to authorize representatives of trade journals or of other enterprises allied to or connected with the newspaper publishing industry.  This membership is open to out of state publishers and other individuals with an interest in newspaper publishing.

(E)  Sustaining Membership:  Any person not actively engaged in the publishing industry but who has formerly been so engaged or who is interested in the welfare of the publishing industry in the state of Wisconsin may become a Sustaining Member upon written application, subject to the approval of the Board of Directors, and upon payment of membership dues as determined by the Board of Directors.

(F)  Honorary Membership:  Honorary Membership may be awarded to  newspaper men and  women and other people who have performed distinguished service for the press or for the Wisconsin Newspaper Association.  The Board of Directors shall grant Honorary Membership, the highest recognition of the distinguished service the Wisconsin Newspaper Association can confer

(G)  Golden Membership:  Golden Membership shall be awarded to any publisher or executive employee who has been the representative of a Business Member newspaper in WNA for at least five years, and who:

    (1)  Has retired from active full-time employment in the newspaper industry, and

    (2)  Has attained the age of at least 55 years.  Golden Members are not required to pay dues.  Other special benefits of Golden Membership may be determined from time to time by the Board of Directors.

(H)  Campus papers may become WNA members.

    (1) Papers shall be at UW System, private college and Technical College campuses.

    (2) Papers shall be regularly published and officially linked to relevant academic programs and/or be registered student organizations.

    (3) Papers shall be encouraged to participate in the WNA internship program.

    (4) Papers shall receive the benefits of members and may participate as such in WNA annual meetings, training and other programs, some of which may be tailored to campus paper needs.

(I)  Limited Business, Associate Business, Affiliate, Sustaining, Honorary, Golden, and Campus members shall be entitled to all of the privileges of the association except the right to vote and hold office.  They may take part in official business of the association with the consent of the membership.

**Section 2.**  Any Business Membership may be represented and vote at any meeting by properly authorized proxy.  The secretary shall send a blank form of proxy to any membership on request.  Proxies to be recognized must be delivered to the secretary prior to the opening hour of any meeting at which they are to be voted.  No proxy shall be valid for more than six months from the date thereof.

**Section 3.**  Each Business Membership, whether in person or by proxy, at any meeting, shall be entitled to one vote.

**Section 4.**  Any membership of this association may be suspended or expelled on the following grounds: delinquent dues, which shall be considered delinquent if not paid on or before March 1 of each year; non payment of dues or assessments 30 days from the date upon which they are due.  The services of the Wisconsin Newspaper Association shall be denied to any publication not a member of the association.

2/2/06

**Section 5.** All requests for memberships shall be submitted to and must be approved by the Board of Directors of this Association. Notice of such application for membership shall be published in the Bulletin three (3) times, first publication at least 25 days before a Board meeting at which the application will be acted upon. Applicants denied membership may re-apply after a lapse of 12 months.

(A) A copy of the annual postal statement or other generally accepted circulation verification, three samples of the publication, and a check for the first year's dues must accompany applications. Dues shall be prorated at 50% for applications made after July 1.

**Section 6.** All memberships agree to accept and abide by the Articles of Incorporation and By-Laws of the Wisconsin Newspaper Association by their acceptance of membership.

## ARTICLE V DUES

The annual dues structure for membership of this association shall be determined by a two-thirds vote of the Board of Directors, from time-to-time at its discretion.

## ARTICLE VI OFFICERS AND BOARD OF DIRECTORS

**Section 1.** The officers and members of the Board of Directors of this association shall be Business Memberships as outlined in Article IV, Section 1 Paragraph (a) sub-section (1) of these By-Laws and shall be a President, a First-Vice President, a Second Vice-President, a Third Vice-President, a Treasurer and a Secretary. The officers shall be elected by a majority of votes cast at the annual meeting by the membership. They shall assume their duties of their respective offices during the annual meeting at which they are elected. In case of death, incapacity or resignation of any officer or director, a successor shall be nominated by the President or the First Vice-President in the absence of the President, subject to confirmation by the Board of Directors within 14 calendar days of such death, incapacity or resignation of the officer or director.

**Section 2.** The President shall name a nominating committee of three, with the immediate Past President as chairman of the committee. Those appointed in even numbered years shall consist of two daily and one weekly representative; in odd years, two weekly and one daily representative.

**Section 3.** The duties of the President, Vice-Presidents, Treasurer and Secretary shall be those usually performed by such officers. However, the Treasurer, in addition to the usual duties, shall be responsible for an annual accounting, and an audit, from time-to-time, as directed by the Board of Directors, to be conducted in accordance with generally accepted accounting procedures, for presentation to the Board of Directors and approval of the membership.

**Section 4.** The Board of Directors shall consist of the President, the Vice-Presidents, of which there shall be three, the Treasurer, the Secretary, the immediate Past President and eight directors consisting of four daily representatives and four representatives of other newspapers.

A) Non daily membership shall be elected to the Board as representatives from each of the four districts of the association. Two nominations for the Board of Directors from each district shall be selected from a primary election ballot of memberships submitted to all memberships of the association. If a tie vote produces more than two nominees, the final election ballot shall list the two plus ties. An election conducted by mail within each district, shall determine which of the nominees will serve as director. The non-daily membership of the Wisconsin Newspaper Association, Inc. shall recognize and accept as members of the Board of Directors to represent them as the chosen delegate as designated by each of the four districts hereby created:

(1) Northwest District - Newspapers in the Wisconsin counties of Ashland, Barron, Bayfield, Burnett, Chippewa, Clark, Douglas, Dunn, Eau Claire, Iron, Pepin, Pierce, Polk, Price, Rusk, St. Croix, Sawyer, Taylor and Washburn.

(2) Southwest District - Newspapers in the Wisconsin counties of Adams, Buffalo, Crawford, Dane, Grant, Green, Iowa, Jackson, Juneau, La Crosse, Lafayette, Monroe, Richland, Sauk, Trempealeau and Vernon.

(3) Northeast District - Newspapers in the Wisconsin counties of Brown, Calumet, Door,

Florence, Fond du Lac, Forest, Green Lake, Kewaunee, Langlade, Lincoln, Manitowoc, Marathon, Marinette, Marquette, Menominee, Oconto, Oneida, Outagamie, Portage, Shawano, Sheboygan, Vilas, Waupaca, Waushara, Winnebago and Wood.

(4)   Southeast District - Newspapers in the Wisconsin counties of Columbia (including Randolph, WI), Dodge (including Waupun, WI), Jefferson, Kenosha, Milwaukee, Ozaukee, Racine, Rock, Walworth, Washington and Waukesha.

(5)  If for geographic or other reasons, a newspaper wishes to be in other than the district to which it is assigned, the Board of Directors upon written request may grant the transfer.

(B)  Four directors shall be elected at large by mail ballot by the dailies to serve on the Board of Directors.  They shall be elected for staggered three-year terms as follows: first election, one director for one year; one director for two years, and two directors for three years.  A nomination ballot shall be sent by mail to all daily members.  If there is one position open, the two nominees receiving the highest number of votes, plus ties if any, shall be placed on an election ballot to determine the director elected to the board representing daily members.  If more than one position is open, one more nominee, plus ties if any, than positions open shall be placed on the election ballot.

**Section 5.**  All officers shall serve for one year or until their successors are duly elected. The office of secretary and the office of treasurer shall be voted on annually and no person shall hold office for more than three terms.

**Section 6.**  The Board of Directors shall establish and maintain a general business office for this association for the purpose of carrying on the business and conducting activities in furtherance of the objectives and purposes of the association, and to employ a chief executive officer and such other personnel as may be necessary in operating such a business office.

**Section 7.**  A majority of the members of the Board of Directors shall constitute a quorum for the transaction of business at any of its meetings.

**Section 8.**  Directors for each district and those at large shall be elected for a term of three years, and shall not hold the office of director for more than two consecutive full terms, partial terms excluded.

**Section 9.**  There shall be an Executive Committee of the Board of Directors which shall consist of the President, the immediate Past President and the three Vice Presidents.  The Executive Committee shall review the activities of the Association, shall monitor the implementation of actions previously approved by the Board of Directors, shall plan the agenda for up coming Board meetings and shall advise and supervise the officers, agents, and employees of the Association in carrying out their duties.  A majority of the committee shall be necessary to constitute a quorum for the transaction of business, and a majority of the members present at a meeting at which a quorum is present shall be the act of the committee.  The President shall preside.  Meetings of the committee shall be held on the call of the President or any two members of the committee.

**Section 10.**  Members of the Board of Directors or any Committee of the Board may participate in a meeting by means of conference telephone or similar communications equipment whereby all persons participating in the meeting can hear each other, and participation in such manner shall constitute presence in person at such meeting for the purposes of these By-Laws.  Before the commencement of any business at a meeting at which any directors do not participate in person, all participating directors shall be informed that a meeting is taking place at which official business may be transacted.

**Section 11.**  Each director or officer of the association shall be indemnified by the association against all costs and expenses including attorneys fees which may be imposed upon or reasonably incurred by him in connection with, or arising out of, any action, suit or proceedings (whether the same proceed to judgment or be settled, discontinued or otherwise terminated) in which he/she may be or become involved or to which he/she may be made a party by reason of being or having been such director or officer or by reason of any action alleged to have been taken or omitted by him/her in either such capacity, provided that the foregoing right to indemnification:
(A)  Shall not extend to, or apply with respect to any matter as to which such director or officer shall be finally adjudged in such action, suit or proceeding to have been individually guilty of negligence, fraud, or other misconduct in the performance of his duty as such director or officer; but in no case shall contesting the validity of any statute, rule, ordinance or regulation in good faith constitute

such negligence or dereliction of duty, even though the same may be held valid and enforceable in such contest:

(B)  Shall cover all costs, expenses and liabilities incurred by such officer or director by reason of acts done or omitted by him/her in good faith in the exercise of his/her judgment that it was in the best interests of the association; and in cases where such liabilities, costs and expenses arise out of a position taken by such officer or director for and on behalf of the association in the behalf of the association in the belief in the right of such position, on which there might be a fair difference of opinion, such indemnification shall be made for any consideration paid or to be paid for any compromise or settlement or for any judgment, decree, fine or penalty imposed against such officer or director upon any claim in any action, suit or proceeding by reason of a determination, or a compromise of such proceedings or claim adverse to the position so taken;

(C)  Shall inure to each such director and officer whether or not he/she is such director or officer at the time such costs or expenses are imposed or incurred and whether or not the claim asserted against him is based on matters which antedate the adoption of these by-laws;

(D)  In the event of his/her death, shall extend to his/her heirs and legal representatives; and

(E)  Shall not be exclusive of any other rights to which any director or officer may otherwise be entitled under the laws of the State of Wisconsin.

(F)  This Article is intended to constitute a contract with each person who, subsequent to its adoption, is serving or shall subsequently serve as a director or officer of the association; and the indemnification provided herein shall be in addition to any other compensation that each such person may receive from the association for his/her services as a director or officer of the association.

## ARTICLE VII  MEETINGS

**Section 1.**  Meetings of the association shall be held at least annually at such time and place as shall be selected by the Board of Directors.  At least 30 days' notice shall be given to each membership.

**Section 2.**  Special meetings of the association may be called by the president or by order of the Board of Directors or upon duly presented petitioned by at least 20 percent of the business memberships.  Notice stating the purpose shall be given to memberships as provided by Section 1, and no other business shall be transacted at any special meeting.

**Section 3.**  The memberships present at any regular or special meeting shall constitute a quorum for the transaction of business.

**Section 4.**  Robert's Rules of Order shall be the authority for all meetings unless otherwise provided in the constitution and by-laws.

## ARTICLE VIII  AMENDMENTS

**Section 1.**  These by-laws may be altered, amended or repealed by a two-thirds vote of the membership present at any regular or special meeting of this association on 30 days notice of announcement of intent to make such alteration, amendment or repeal.

2/2/06



GODFREY
& KAHN s.c.
ATTORNEYS AT LAW

ONE EAST MAIN STREET
POST OFFICE BOX 2719
MADISON, WI 53701-2719
TEL 608-257-3911
FAX 608-257-0609
www.gklaw.com

October 31, 2008

BY FACSIMILE 715-344-4241
AND U.S. MAIL

Douglas E. Chickering, Executive Director
Wisconsin Interscholastic Athletic Association
P.O. Box 267
Stevens Point, WI  54481-0267

    RE:    **Internet Streaming Policies**

Dear Mr. Chickering:

    We represent the Wisconsin Newspaper Association ("WNA") and its members.  We are writing on their behalf to demand that the Wisconsin Interscholastic Athletic Association ("WIAA") rescind its media policies on internet streaming of state high school tournament events.  Those policies purport to grant a private company, When We Were Young Productions ("WWWY"), the exclusive right to control internet streaming of tournament events.  That policy is unconstitutional on its face and as applied.

    As you know, the WIAA's claimed right to control the news media's use of photographs taken at tournament events first came to the WNA's attention in 2007.  The WNA protested at that time the following provision of the WIAA's Media Policy Reference Guide:

> Photographs taken with the authoritative use of the media
> credential by newsgathering media outlets are strictly for editorial,
> non-commercial use only.

Based on this policy, the WIAA claimed the right to prohibit newspapers from selling photographs taken at tournament events.  Indeed, the WIAA claimed it had granted WWWY the exclusive right to do so.

    Responding to the WNA's objection, the WIAA first clarified that its policy and exclusive contract with WWWY did not prohibit the sale of photographs that newspapers had published in print.  When this did not satisfy the WNA, many of whose members sell photographs published on their internet web sites, the WIAA wisely decided not to enforce its stated policy.  Speaking at the WNA's conference that summer, you said the WIAA preferred to see how a similar dispute was resolved in our neighboring state of Illinois, where it was already in litigation, and where the news media's position ultimately prevailed.

OFFICES IN MILWAUKEE, MADISON, WAUKESHA, GREEN BAY AND APPLETON, WI; WASHINGTON, DC; AND SHANGHAI, PRC
GODFREY & KAHN IS A MEMBER OF TERRALEX®, A WORLDWIDE NETWORK OF INDEPENDENT LAW FIRMS.



EXHIBIT
B

Douglas E. Chickering, Executive Director
October 31, 2008
Page 2

A similar dispute has now arisen over the WIAA's claimed right to prohibit any live coverage of tournament events by internet streaming, except through its "exclusive" contractor, WWWY. This claim is asserted, without reference to any supporting legal authority, in the WIAA's media guide:

> The WIAA owns the rights to transmit, upload, stream or display content live during WIAA events and reserves the right to grant exclusive and non-exclusive rights or not grant those rights on an event-by-event basis.

Worse, the media guide indicates that WWWY has been given the exclusive authority to control, at its sole discretion and without any apparent standards, any live internet streaming of tournament events.

> #All parties interested in the production and distribution of any State Tournament or State Tournament Series event via broadcast or internet streaming will be required to obtain rights from current production and distribution rights holder as outlined above.
>
> Production and distribution rights include, and are not limited to, live or delayed television through net or cable outlets, video on demand, content streaming through any platform and/or physical media. All permissions granted, policies enforced and fees requested will be at the sole discretion of the rights holder. Detailed information regarding policies and fees are available upon request from When We Were Young Productions (608) 849-3200 ext. 225.

WWWY has informed WNA members of the fees and conditions under which it would permit live streaming of tournament events:

> If an entity wants to produce and stream (on its own) a WIAA tournament event, whether live or delayed on its web portal, the fees are as follows:
>
> $250 -- for a single-camera (with talent) production
> $1500 -- for a multi-camera (with talent) production
>
> The entity must also send us a master copy of the game and is prohibited from selling copies of the game to anyone.

Douglas E. Chickering, Executive Director
October 31, 2008
Page 3

> WWWY will produce a master DVD from the tape (that is sent)
> and market the product on prepfilms.com of which the entity will
> receive a 20% royalty on gross sales.

Thus, it appears that the WIAA has not only granted WWWY the "sole discretion" to charge whatever it wants to WNA members seeking to utilize internet streaming technology to report on tournament events, but also to demand the right to market their work and retain 80% of any revenue generated. This is patently unconstitutional.

*State high school sports tournaments are public, taxpayer-supported events.* As such, neither the host schools nor the WIAA has any right to discriminate between members of the news media who wish to report on the events, using whatever technology they choose, subject only to reasonable and non-discriminatory time, place and manner restrictions. Granting exclusive live coverage rights to one news organization, where there are no physical constraints that would prohibit accommodating all news organizations who care to use live streaming technology to report the event, serves no compelling government interest and is not a reasonable time, place and manner restriction.

High school athletic organizations have long been treated as state actors, just like their public school members, for constitutional purposes. *See Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S.288 (2001). Although the issue has not yet been decided in Wisconsin, we see no factual or legal basis on which the WIAA's constitutional status can be distinguished from its counterparts in Tennessee, Illinois, Arizona, Missouri, Louisiana, Oklahoma, Indiana, Mississippi, Rhode Island or Pennsylvania, *see id.* at 294 n.1, or any of the other states where the issue has been adjudicated since *Brentwood* was decided. *See, e.g., Communities for Equity v. Michigan High School Athletic Association*, 459 F.3d 676 (6th Cir. 2006); *Christian Heritage Academy v. Oklahoma Secondary School Activities Association*, 483 F.3d 1025 (10th. Cir. 2007).

The WIAA lacks the authority, as a state actor, to deny the WNA's members the right to utilize internet streaming technology to report on state high school tournament events on an equal basis with WWWY. *See, e.g., American Broadcasting Companies, Inc. v. Cuomo*, 570 F.2d 1080, 1084 (2nd Cir. 1977) ("[O]nce there is a public function, public comment and participation by some of the media, the First Amendment requires equal access to all of the media."). The WNA does not object to reasonable fees paid to host schools to cover their costs of producing the events, including any costs specifically incurred to facilitate internet streaming coverage. To require them to pay fees to a competing news organization and relinquish ownership of their work product, however, is plainly unconstitutional.

State high school athletic competitions have been part of newspapers' core coverage since before broadcast and internet technology even existed. The WNA's members will not meekly surrender their right to use internet streaming technology to enhance their reporting on

Douglas E. Chickering, Executive Director
October 31, 2008
Page 4

these events. The WNA and its members would welcome a constructive dialogue with the
WIAA and its counsel on these issues, and would prefer to avoid litigation, but they will not
accept the status quo as set forth in the WIAA's media guide. Please let us know before
November 7, 2008, when the next round of the high school football tournament begins, if the
WIAA is interested in meeting to discuss resolution of this dispute.

Sincerely,

GODFREY & KAHN, S.C.

Robert J. Dreps

RJD:jlm
3294093_1



# Production Rights and Distribution Agreement between the Wisconsin Interscholastic Athletic Association (WIAA) and American-HiFi, Inc. dba When We Were Young Productions (WWWYP)

## General Terms of Agreement

I.  **RIGHTS**

    a.  American-HiFi/When We Were Young Productions will be granted the exclusive right to produce, sell, and distribute all WIAA tournament series and championship events for all WIAA sports with the exception of existing contracts as of the date of this contract.  These rights also include the existing WIAA film library housed in Stevens Point.

    b.  American-HiFi/When We Were Young Productions will be granted the joint right to produce, sell, and distribute, on a delayed basis, all WIAA tournament series and championship events for all WIAA sports under an existing contract as of the date of this contract. These joint rights require approval from both the WIAA and the existing contract holder as of the date of this contract.

    c.  American-HiFi/When We Were Young Productions will be granted to right to market this partnership and to use the WIAA trademark, logo, and name to promote these efforts.

    d.  American-HiFi/When We Were Young Productions will be granted the right to establish an online property containing the name WIAA for use of marketing and distributing WIAA tournament series and championship content.

    e.  American-HiFi/When We Were Young Productions will be granted the right to legally enforce any violation of these production, sale, and distribution rights by a third party.

    f.  American-HiFi/When We Were Young Productions will be granted the right to authorize affiliate production partners for the production of WIAA tournament series and championship events.

II.  **CONTENT PRODUCTION**

    a.  American-HiFi/When We Were Young Productions will agree to produce directly or through an affiliate all WIAA tournament series and championship events.  Our production goals would be as follows for all sports:

        i.  100% of all state tournaments

        ii.  50 % of all sectional events

        iii.  25 % of all regional events

    b.  Event production will vary and may include any of the following:

        i.  Single camera high location

        ii.  Single camera low location

        iii.  Multiple camera mixed

        iv.  Special edit

    Production enhancements may include play-by-play commentary, slow motion replay, and special graphics.  Each event strategy will be spelled out in advance and budgeted out as noted in the **Revenue** section of this contract.

    c.  American-HiFi/When We Were Young Productions will act as an agent of the WIAA in the event that a third party expresses interest in the production, sale, or distribution of any WIAA tournament series or championship event that American-HiFi/When We Were Young Productions holds rights to.


EXHIBIT
C



    d.  American-HiFi/When We Were Young Productions will agree to actively seek out and affiliate all qualified production resources that have a history of producing WIAA tournament series or championship events.

✓    e.  American-HiFi/When We Were Young Productions will agree to actively involve local student resources in our production efforts, whether directly by us or through an affiliate, to ensure educational and cooperative benefits for the individual students and their schools.

## III.   CONTENT DISTRIBUTION

    a.  American-HiFi/When We Were Young Productions will agree to establish a multi-platform distribution strategy and will agree to directly distribute or contract with a distribution agent for all WIAA tournament series and championship events. These agreements would include live production, live or delayed streaming, video on demand, tape delayed production, and physical media. Examples of distribution platforms are as follows:

        i.   Internet based video on demand (web streaming)
        ii.  DSL/Broadband based video on demand
        iii.  Cable based video on demand
        iv.  Satellite based video on demand
        v.   Cable (live or delayed)
        vi.  Satellite (live or delayed)
        vii.  Network (live or delayed)
        viii. Physical Media

    b.  The WIAA will reserve the right to review, modify, or reject any terms of these distribution agreements, which do not support the purpose and mission of the WIAA and our mutual partnership.

## IV.   SPONSORSHIPS

    a.  American-HiFi/When We Were Young Productions will be granted the right to solicit and contract with sponsors that adhere to the WIAA guidelines as published.

    b.  American-HiFi/When We Were Young Productions will be granted the right to place and promote these sponsors on all forms of content distribution and market them as joint WIAA and WWWYP sponsors.

## V.   REVENUE

    a.  American-HiFi/When We Were Young Productions agrees to pay the WIAA a rights fee based on the following formula:

        i.   WWWYP will establish a tournament/event production cost that encompasses all business related expenses to produce the tournament or event.
        ii.  WWWYP will receive 100% of all revenues generated by the distribution of the tournament/event up until all of the costs have been recaptured.
        iii.  All revenues generated after the tournament/event cost has been recaptured will be split 50% to the WIAA and 50% to WWWYP with the exception of physical media sales.
        iv.  All sales of physical media after the initial cost has been recaptured will be split 20% to the WIAA and 80% to WWWYP.

    b.  The WIAA shall be the sole overseer of any funds distribution (if any) to participating schools.

    c.  American-HiFi/When We Were Young Productions will be responsible for the collection and clearing of revenues generated for content distribution.



d. Monthly status reports will be delivered to the WIAA. Collected funds will be distributed to the WIAA on a monthly basis.

e. All revenues generated by solicitation of sponsor contracts will be split 30% to the WIAA and 70% to WWWYP. Funds will be distributed immediately upon collection.

## VI.  MISCELLANEAUS

a. American-HiFi/When We Were Young Productions will agree to provide video production resources to the WIAA upon request and at no additional cost to the WIAA. These would include:
    i. Taping and duplication of WIAA meetings and corporate events
    ii. WIAA promotional videos
    iii. Tournament highlight trailers
    iv. Video board content

b. The WIAA will agree to provide free advertising in all tournament materials and verbally promote our partnership and products at all venues and the WIAA website.

c. The WIAA will agree to provide preferred credentials and access to American-HiFi/When We Were Young Productions at all WIAA tournament series and championship events and venues.

d. The term of this agreement will be for 10 years from the date of signing.


Please signify your acceptance of these General Terms of Agreement by signing below.

Acknowledged and agreed:

By: _____ Date: 5/26/05        BY: _____ Date: 4·26·05
Tim Eichorst                             Doug Chickering
President                                Executive Director
American-HiFi/                           WIAA
When We Were Young Productions

## TELEVISION BROADCAST RIGHTS AGREEMENT
## BETWEEN WISCONSIN INTERSCHOLASTIC ATHLETIC
## ASSOCIATION AND THE WIAA STATE NETWORK

This is an agreement ("Agreement") among WKOW Television, Inc., WAOW - WYOW Television, Inc. and WXOW - WQOW Television, Inc. (hereafter collectively referred to as "The WIAA State Network") and the Wisconsin Interscholastic Athletic Association (hereafter referred to as "WIAA").

### 1.    **Length of Agreement.**

1.1    This Agreement shall be effective July 1, 2004 and shall end on June 30 2010.  Unless either party gives notice of termination to the other in writing prior to June 30, 2008 or June 30 of each subsequent year thereafter, this Agreement shall be extended by one additional year and shall be extended each subsequent July 1 thereafter on the terms and conditions described herein.  The intent of the parties as expressed above is to preserve a three year "rolling horizon" agreement and that the procedure described above will provide a minimum of two (2) years' prior notice of cancellation by either party.

1.2    Notwithstanding anything else in this Agreement to the contrary, both parties understand that the obligations of The WIAA State Network are conditioned on the approval of the broadcast network(s) having an affiliation relationship with The WIAA State Network (which presently is ABC television network) to broadcast the championship events described in this Agreement.



2.   **Grant of Broadcast Rights and Fees.**

2.1   The WIAA State Network will pay WIAA a total of $40,000.00 for each year of this Agreement. Payment of each annual rights fees of $40,000.00 to be submitted in full by The WIAA State Network to the WIAA by May 1 of each of the contract years.

2.2   WIAA hereby grants for the above annual fees to The WIAA State Network the exclusive telecast rights for any type of live video (including internet and cyber casting) and for television broadcasting of the girls and boys state championship hockey games and the girls and boys state championship basketball games. These telecasts would include:

> (i)   the Saturday hockey championship games for both girls and boys from approximately noon to 4:00 p.m., and
>
> (ii)   the entire girls and boys (Thursday to Saturday) quarter final, semi-final and championship games (16 girls and 16 boys) Thursday and Friday approximately 9:00 a.m. to 12:30 p.m.; 1:30 p.m. to 5:00 p.m. and 6:30 p.m. to 10:00 p.m. with Saturday championship telecast approximately noon to 4:00 p.m. and 6:30 p.m. to 10:00 p.m.

3.   **Television/Cable Markets.**

3.1   The WIAA State Network shall provide "live" telecast coverage in the Madison, Wausau, Rhinelander, LaCrosse and Eau Claire markets. The WIAA State Network will use best efforts in providing live telecast coverage in the Milwaukee and Green Bay markets. In the event "live" telecast coverage is unavailable in the

Milwaukee or Green Bay markets, The WIAA State Network may substitute on a "best effort basis" cable coverage or delayed television coverage in the Milwaukee and Green Bay markets. The WIAA State Network will provide satellite transmission to those television stations and cable systems in other areas of the State of Wisconsin that wish to participate in accordance with terms established by The WIAA State Network.

3.2     The WIAA State Network owns the intellectual property rights in the mark "The Magic of March." WIAA agrees no use of the mark "The Magic of March" will be granted without the authorized written permission of The WIAA State Network.

3.3     No personal home or other business satellite reception will be provided by The WIAA State Network or granted by the WIAA except for those stations in The WIAA State Network that provide programming from time to time to direct broadcast signal providers ("DBS") (for example, Echostar or Direct TV).

3.4     The WIAA State Network retains the exclusive copyright to the WIAA State Tournaments for duplication of all boys and girls state championship hockey and basketball telecasts. No television station not participating with the WIAA State Network may use any video coverage until 20 minutes following the completion of any "live" broadcast coverage. Stations that are not participating with The WIAA State Network may only use up to two (2) minutes of footage of the above delayed coverage. The WIAA will notify all television stations of this restriction.

4.     **Production Television Requirements.**

4.1     The WIAA State Network will provide and assume all costs of production fees, equipment fees and appropriate insurance for its equipment and personnel for the length of this Agreement.

4.2    The WIAA agrees to "broadcast TV time outs" within all championship telecasts that preserve the integrity of the games and meets the telecast objectives of The WIAA State Network. WIAA will notify The WIAA State Network of any significant changes the WIAA elects to impose that would alter the existing format of any championship telecast at least one year prior to the first telecast of any proposed altered WIAA championship event.

4.3    The WIAA will allow complete facility access to The WIAA State Network for all "live" coverage without management obstacles or associated fees.

4.4    WIAA will grant The WIAA State Network first right or preference for all technical set up of all live championship telecast coverage.

4.5    Live transmissions by any broadcaster that is not part of The WIAA State Network for news gathering are to be cleared and approved by The WIAA State Network in advance.

4.6    WIAA and The WIAA State Network championship telecast "play by play" announcers and game analysis (color announcers) will mutually be agreed upon by the WIAA and The WIAA State Network.

4.7    All nonbroadcast videotaping and coverage of any WIAA championship telecast event covered under this Agreement is prohibited.

5.    **Non-Broadcast Related Terms.**

5.1    The WIAA agrees to provide The WIAA State Network the following at no charge for each year of this Agreement:

a.    One full page color ad in all championship series programs.

b.   Inclusion in The WIAA State Network major sponsors and
     participating television station logos in the annual wall planner
     submitted to all WIAA member schools.

c.   Sixty (60) "all session" tickets to girls championship basketball
     series and eighty (80) "all session" tickets to boys championship
     series. Additional tickets to any WIAA championship event may be
     purchased directly through the WIAA.

5.2   The WIAA State Network agrees to provide the WIAA the following at no
charge for each year of the agreement:

a.   Ten (10) 30 second WIAA public service announcements per
     month (120 annually) on each of the following stations: WKOW TV,
     WAOW - WYOW TV, and WXOW - WQOW TV. These
     announcements would be scheduled in the "best time available"
     and subject to each station's scheduling and preemption policy.
     These announcements cannot be accumulated or transferred from
     one month to another. All announcements will be WIAA endorsed
     and must be submitted to each individual station which is part of
     "The WIAA State Network" in a timely manner. The stations in The
     WIAA State Network are to provide the WIAA with monthly
     verification of schedule placement.

b.   Two (2) one hour wrap up anthology programs to highlight
     spring/summer WIAA championship events and fall/winter WIAA
     championship events to be aired at a time and date to be

determined (most likely August and December of each year in an
11:00 a.m. to 12:00 midnight time period). These programs to air
on WKOW TV, WAOW - WYOW TV and WXOW - WQOW TV only.

c.   Provide commercial production time and services for WIAA annual
board of control meeting above one hour program and public
service announcements.

6.   **Amendments.** This Agreement contains the essence of the exclusive
"live" video and television broadcast rights agreement granted by WIAA to The WIAA
State Network. From time to time either party may request a meeting with the other
party to discuss mutual beneficial changes to any of the above terms upon 90 day
written notice to the other party.

This Agreement was executed by the parties on the dates indicated below.

WKOW Television, Inc., WAOW - WYOW
Television, Inc. and WXOW - WQOW
Television, Inc. ("The WIAA State Network"):

Dated: ___3/15/04___

By: _____

Print Name Here: _Ralph M. Oakley_

Its _____VP_____

Wisconsin Interscholastic Athletic Association
("WIAA")

Dated: ___3/20/04___

By: _____

Print Name Here: _Doug Chickering_

Its _Executive Director_

TELECAST RIGHTS AGREEMENT

THIS TELECAST RIGHTS AGREEMENT (the "Agreement"), dated as of August 1, 2007, is by and between the WISCONSIN INTERSCHOLASTIC ATHLETIC ASSOCIATION ("WIAA") and FOX SPORTS NET NORTH, LLC ("FSNN") (collectively, the "Parties")

1.    **RIGHTS GRANTED.**

(a)    Games.    WIAA hereby grants to FSNN the sole and exclusive license and right throughout the universe, in perpetuity, to produce and Telecast (as defined below), and to sublicense for Telecast, in any and all languages, the seven (7) Wisconsin High School Football Championship Games to be played during each of the 2007-08, 2008-09 and 2009-10 academic years (individually and collectively, the "Game(s)"), on a live and/or delayed basis, in FSNN's sole discretion. All Games are currently scheduled to be played at Madison Camp Randall Stadium at the University of Wisconsin (the "Site"). All references to the Site herein shall apply to any replacement site; *provided, however,* that the site may only be changed by mutual written agreement of the Parties; *provided further, however,* that if the Parties cannot agree on a changed site, WIAA's decision regarding the site shall control, provided that FSNN shall have the right, in its sole discretion, to elect not to produce and Telecast any Games played at a changed site, or to terminate this Agreement with no continuing obligations to WIAA. The dates and times of the Games shall be mutually determined by the Parties; *provided, however,* that if the Parties cannot agree, WIAA's decision regarding the dates and times of the Games shall control; *provided further, however,* that if the Parties cannot agree on the dates and times of any of the Games, FSNN shall have the right, in its sole discretion, to elect not to produce and Telecast such Games pursuant to this Agreement, or to terminate this Agreement with no continuing obligations to WIAA. In the event that FSNN elects not to produce and Telecast any Games after the site, dates and times of the Games have been determined, FSNN shall notify WIAA in writing of such election no later than September 1 of the applicable Contract Year (as defined below). In the event that the site, dates and/or times of any of the Games change for any reason after FSNN has made its initial election to produce or to not produce such Games, WIAA shall promptly notify FSNN of such changes, and FSNN shall have ten (10) business days following such notification to elect to either produce and Telecast such Game(s) or to not produce and Telecast such Game(s), in FSNN's sole discretion.

(b)    Telecasts.    For purposes of this Agreement, Telecast shall mean any transmission of a video signal and/or audio signal, by any means of technology, whether presently existing or hereafter developed, including, without limitation, via standard television (free over-the-air television) and non-standard television (including, without limitation, basic, tier and/or premium cable distribution, direct broadcast satellite television ("DBS"), subscription television ("STV"), multi-point distribution systems ("MDS"), multiple multi-point distribution systems ("MMDS"), local multi-point distribution systems ("LMDS"), satellite master antennae television systems ("SMATV"), open video system ("OVS"), television receive-only ("TVRO"), closed-circuit television, radio, online (including, without limitation, Internet, www, cable modem and all other forms of online distribution now known or



1

hereafter developed), internet protocol television ("IPTV"), mobile/wireless, all interactive forms of distribution now known or hereafter developed, airline, theater, restaurant and hotel/motel distribution, narrow and broadband services, compact disc, CD-1, videocassette (including exclusive commercial distribution), videodisc, videogram, video dial tone, pay-per-view, high-definition format, video on demand ("VOD"), subscription video on demand ("SVOD"), via Fox Sports Net's video programming service currently known as "Fox College Sports" (or any successor network), and by any other manner or system. The foregoing shall include, without limitation, FSNN's right to use portions of the Games ("Clip(s)") and to Telecast the Games, from time to time, as filler programming (any Game Telecast in less than its entirety). In connection with Clip rights and filler programming, FSNN shall have no obligation to WIAA with regard to advertising inventory. The exclusive rights granted to FSNN herein shall preclude WIAA and its member schools, individually and collectively, from licensing or otherwise granting to any person, corporation, partnership, or other entity (collectively, a "Person") any right to produce and/or Telecast, whether live or on a delayed basis, any portion of any Game at any time. FSNN shall be entitled to one (1) live Telecast and unlimited re-Telecasts of the Games in perpetuity. FSNN shall also have the right, in perpetuity, to use excerpts of the Games for promotional purposes as set forth herein.

(c)     Preemption.  FSNN may preempt any Game Telecast in order to Telecast a news event or an event or program deemed by FSNN to be of public importance or significance. In addition, in the event that any Game Telecast conflicts with FSNN programming commitments, including, without limitation, national programming commitments, professional team commitments, collegiate programming commitments and/or live event programming, FSNN shall have the unlimited right, in FSNN's sole discretion, to Telecast such Game on a delayed basis, and/or to cease a Game Telecast prior to completion of such Game and/or begin a Game Telecast after such Game has commenced, as applicable, in order to honor such FSNN commitments, and FSNN shall use best efforts to replay such preempted Game Telecast within seven (7) days of preemption. Notwithstanding the foregoing, in the event that FSNN intends to initially Telecast any Game on a delayed basis due to a scheduling conflict, WIAA and FSNN shall work together to attempt to secure alternate live distribution for such Game, the selection of such alternate live distribution outlet to be approved by FSNN, such approval not to be unreasonably withheld; *provided, however*, that FSNN shall not incur any additional costs for such alternate live distribution, and in the event that alternate live distribution is secured for such Game, the applicable alternate live distribution outlet shall pay to FSNN a mutually agreed upon share of FSNN's production and transmission costs for such Game Telecast, and FSNN shall retain the right, but no obligation, to Telecast the applicable Game in FSNN's sole discretion.

(d)     Use of Marks.  WIAA hereby grants FSNN the right, without payment, to use, for purposes of the promotion of the Telecast of the Games and promotion of the FSNN and/or Fox Sports Net ("FSN") programming services, the name, logo, trademark, symbol, seal, emblem, insignia and other identity of WIAA and each of its member schools and the likenesses, voices and biographical information of the players, managers, coaches, officials and other persons of WIAA and its member

2

schools; *provided, however*, that FSNN shall not undertake, or shall immediately cease, such use if notified by WIAA in writing that WIAA reasonably believes that such use is contrary to the best interests of WIAA or its member schools.

(e)     Copyright.   Anything in this Agreement to the contrary notwithstanding, FSNN shall own, in perpetuity, all right, title, interest and copyrights in and to the Game Telecasts, and each of them (and all elements thereof), and all reproductions, excerpts and/or footage created in the process of producing the Game Telecasts or derived from the Game Telecasts, together with the performances embodied thereon. WIAA shall not redistribute, use or exploit, in any manner, any aspect of the footage contained in or created in connection with the production of the Game Telecasts without FSNN's prior written consent; *provided, however*, that WIAA shall be permitted, without the prior written approval of FSNN, to (i) use Game Telecast footage for internal, non-commercial use, which is not in conflict with the rights granted hereunder (*e.g.*, highlight tapes, recruiting videos, in-house productions and advertising needs, etc.), and (ii) duplicate and distribute copies of the Game Telecasts for home-video and home-DVD distribution only (*i.e.*, no other form of Telecast), provided that in each case WIAA shall provide FSNN with on-screen courtesy credit and shall not alter the screen or otherwise cover any FSNN or Fox Sports Net bug, graphic identifier or "Fox Box" appearing thereon. FSNN shall provide WIAA with one (1) Betacam SP copy of each Game Telecast within ten (10) business days of the conclusion of each Game.

2.     TERM; EXCLUSIVE NEGOTIATION PERIOD; RIGHT TO MATCH.

(a)     Unless otherwise terminated pursuant to the provisions hereof, the term of this Agreement shall be for a period of three (3) years, commencing on August 1, 2007 and ending on July 31, 2010 (the "Term"). Each year of the Term from August 1 through July 31 shall be deemed a "Contract Year."

(b)     Commencing on May 1, 2010 and continuing through July 31, 2010 (the "Exclusive Negotiation Period"), WIAA shall negotiate exclusively and in good faith with FSNN with respect to the terms and conditions upon which WIAA shall grant FSNN the exclusive production and Telecast rights throughout the universe to the Wisconsin High School Football Championship Games to be played after the expiration of the Term, and WIAA shall use good faith efforts to enter into an agreement as soon as is practicable. Prior to the end of the Exclusive Negotiation Period, WIAA shall not negotiate with any other party with respect to such rights. If, at the end of the Exclusive Negotiation Period, the Parties have not reached agreement, WIAA shall then have the right to negotiate with other parties; *provided, however*, that FSNN shall have the right to match any other offer to telecast the Wisconsin High School Football Championship Games to be played after the expiration of the Term by providing written notice to WIAA within ten (10) business days of receiving written notice from WIAA of any such offer; *provided further, however*, that FSNN shall not be required to match any terms that cannot be met easily by one television entity as compared to another, and FSNN shall not be required by WIAA to Telecast any Game on any network or programming service

3

other than FSNN. Any non-cash items included in any such offer shall be allocated a monetary value for purposes of FSNN's right to match.

(c)     The obligations of WIAA under this Section shall survive any termination of this Agreement for any reason other than a material breach by FSNN.

3.     EXCLUSIVITY.

FSNN's license for the production and Telecast of the Games shall be exclusive in all media throughout the universe in perpetuity. WIAA agrees that there shall be no other live and/or delayed Telecast whatsoever (in over-the-air, cable, online/Internet distribution, or any other form of media on a local, regional or national basis) of any Game, or of any portion thereof. No other party shall have any other rights or ownership interest in the Games, or any portion thereof. For purposes of clarity only, and without limiting any other term of this Agreement, the rights granted to FSNN hereunder prevent any party, other than FSNN, from making available any of the Games, or portions thereof, on an internet website.

4.     PRODUCTION FOR GAMES TO BE TELECAST.

(a)     Personnel. FSNN will provide production staff and other personnel, facilities and services as FSNN determines, in its sole discretion, are required to produce the Game Telecasts. FSNN shall select, retain and compensate all on-air talent in connection with all Game Telecasts, including any and all Game play-by-play announcers, hosts and color commentators, in FSNN's sole discretion; *provided, however,* that FSNN shall consult with WIAA prior to selecting such on-air talent; *provided further, however,* that FSNN's decision regarding selection of on-air talent shall control.

(b)     Access. WIAA shall provide to FSNN, its agents and personnel, as well as all FSNN production vehicles, complimentary access to all elements of the Games, including, without limitation, the Site, the participants, the coaches, the officials, and all contiguous activities, excluding player locker room access. FSNN shall receive proper working credentials, and a mutually agreed upon number of parking spaces as close to the Site as possible provided that, at a minimum, FSNN shall be provided with no less than a number of parking spots sufficient to accommodate all FSNN and FSNN-authorized personnel involved in support of each applicable Game Telecast.

(c)     Format. WIAA shall (i) consult and coordinate with FSNN's coordinating producer prior to the Games to integrate the Game formats with FSNN's commercial format, and, if applicable, (ii) appoint a liaison officer to be responsible for and cooperate in calling time-outs and other structured interruptions so that FSNN's commercial format is satisfied and commercial and promotional announcements are properly spaced.

(d)     Production Standards. WIAA shall provide FSNN, without charge, with suitable space and locations, as FSNN may determine at the time of its advance technical survey of the Site, for its announcers and for the installation and operation of all microphones, television cameras and related equipment to be used by FSNN in

4

connection with its production and transmission (including without limitation, if applicable, satellite uplink or fiber optic equipment) of the Game Telecasts. WIAA shall arrange for all electrical power as is necessary to operate all FSNN production equipment, including, if necessary, a generator, and shall reimburse FSNN for any FSNN out-of-pocket costs in connection therewith. In the event that the Site does not have sufficient lighting for FSNN-caliber broadcasts, as determined by FSNN in its sole discretion, WIAA shall supply such additional lighting at WIAA's sole cost. FSNN shall have the right to install, maintain in and remove from the Site and the surrounding premises such wires, cables and equipment as may be necessary for its coverage of the Games  FSNN shall have the right to bring into or adjacent to the Site mobile units for the transportation of equipment and personnel.

(e)     Display.  FSNN shall have the right to display its name and trademark on its equipment, and any platform or broadcasting booth used at the Site in such a manner and location as to be reasonably and readily apparent to both the spectators at the Site and the viewers watching the Game Telecasts as distributed by FSNN.

(f)     Creative Control.  At all times, FSNN has the sole and exclusive right to exercise creative control over the production and format of the Game Telecasts. The foregoing shall include, but is not limited to, on-air talent (subject to Section 4(a) above), television producers, directors, any production companies selected for the Game Telecasts and the placement of all in-Game elements, including, but not limited to, billboards, features, squeezebacks, live reads, etc.  FSNN has the unlimited right to edit, augment and otherwise adapt the Game Telecasts, subject to the rights granted to WIAA herein to have included in the Game Telecasts certain WIAA-designated promotional inventory.

5.     CONSIDERATION.

(a)     Rights Fees.  FSNN shall pay an annual rights fee to WIAA in the total amount of Twenty-Thousand Dollars ($20,000.00) during each Contract Year (the "Annual Rights Fee") for a total of Sixty Thousand Dollars ($60,000.00) during the Term.  Payment of the Annual Rights Fee shall be made by September 1 of each Contract Year of the Term.  Notwithstanding the Annual Rights Fee set forth above, in the event that FSNN is not able to Telecast any of the seven (7) Games during any Contract Year, for any reason, FSNN shall be entitled to a 1/7 reduction in the Annual Rights Fee payable during such Contract Year for each such Game that FSNN is not able to Telecast, and in the event this Agreement is terminated pursuant to the terms hereof, FSNN shall not be obligated to pay the Annual Rights Fee for Contract Years following such termination.

(b)     WIAA Commercial Inventory.  In consideration of all rights granted in this Agreement, and subject to availability, WIAA shall receive a combination of one minute and thirty seconds (1.30) of promotional spots during each Telecast of each Game to be used solely for the promotion of WIAA (*i.e.*, no resale or other provision to advertisers or WIAA sponsors and no third party sponsor affiliation or tags); *provided, however*, that WIAA agrees that such promotional inventory shall not promote any other national, regional or local sports distribution outlet, including any network, channel or Internet programming service (*e.g.*, ABC, ESPN, ESPNU, ESPN2, ESPN.com, ESPN Radio, CSTV, TNT, TBS, Comcast, etc.).     The promotional inventory shall be produced by WIAA at no cost to FSNN.  To ensure inclusion within the Game Telecasts, all WIAA promotional spots must satisfy FSNN's technical delivery requirements, and must be delivered to FSNN no later than five (5) days prior to the applicable Game Telecast.  In the event WIAA promotional spots are not properly delivered in a timely manner, FSNN shall have no obligation to Telecast such spots.   The promotional inventory shall be reasonably acceptable to FSNN.

(c)     FSNN Commercial Inventory.  FSNN shall retain all remaining commercial inventory, including, without limitation, all national, regional and affiliate commercial inventory, all billboards and features, all remaining national, regional and affiliate promotion time, and all national direct response advertising time during each Telecast of each Game.  FSNN shall have the right to insert into the Game Telecasts sponsorships, commercials, advertising, billboards and sponsored features of any kind or nature, by any means now known or hereafter devised, including, without limitation, virtual signage; *provided, however*, that FSNN shall be prohibited from selling any commercial inventory or sponsorship in the alcohol (including malt beverage), tobacco and gaming advertising categories.  As between FSNN and WIAA, FSNN shall be entitled to retain all revenue derived from the sale of commercial inventory.

(d)     FSNN Banners.  At no cost to FSNN, FSNN shall be permitted to place a mutually agreed upon number of promotional banners, but in any event no fewer than two (2) banners promoting FSNN, FSN, or FSN national or regional news or other related programming at the Site during each Game so that they are readily apparent to the spectators at the Site and within camera angles.  In addition, WIAA shall use best efforts to obtain similar banner placement at the site of all other WIAA championship events during the Term.  All of such banners will be provided by FSNN.

(e)     Game Programs.  WIAA shall provide to FSNN, at no additional cost to FSNN, two (2) full-page advertisements (promoting FSNN, FSN and/or FSNN sponsors (in FSNN's sole discretion)) in each game program distributed at every WIAA championship event during the Term (including, without limitation, each Game), with artwork to be provided by FSNN; *provided, however*, that in each game program distributed at every WIAA championship swimming, golf, track, tennis and gymnastics event during the Term, WIAA shall use best efforts to provide to FSNN, at no additional cost to FSNN, a ¼ page, ½ page or full-page advertisement (promoting FSNN, FSN and/or FSNN sponsors (in FSNN's sole discretion)), with artwork to be provided by FSNN.

6

(f)    Game Tickets. WIAA shall provide to FSNN, at no charge to FSNN, a minimum of twelve (12) lower-level tickets to each of the Games.

6.    ACCESS AND FACILITIES.

(a)    Access. Neither WIAA nor its member schools shall grant access to the Site to any other crews for purposes of obtaining game coverage, other than as specifically set forth herein or to a local news crew for purposes of a local newscast to be aired only after each Game has ended, and WIAA shall ensure that local news crews shall not interfere in any way with FSNN's camera positions at the Games.   Press credentials issued to crews not affiliated with FSNN or the schools competing will restrict the use of Game footage to excerpts of two (2) minutes or less during news or sports programs, and will prohibit such crews from authorizing use of such footage by third parties.

(b)    Still Photographer Access.   WIAA agrees to provide FSNN's staff photographers with photographer's credentials equivalent to the highest grade of credentials given to print media and other photographers covering the Games.

7.    ARRANGEMENTS; NAME AND LIKENESS.

WIAA shall be solely responsible for making all arrangements (including any compensation) with the owner(s) of the Site, and with all competitors, officials and other persons participating in or otherwise connected with the Games.   Those arrangements shall accord to FSNN's rights under this Agreement including, without limitation, all name and likeness rights of all participants, officials, institutions and any other persons connected with the Games, necessary for FSNN's Telecast of the Games and the promotion and advertising thereof.

8.    INTERVIEWS; FSNN EMPLOYEE ADMITTANCE.

Upon appropriate prior notice, WIAA agrees to use reasonable efforts to provide FSNN with access to WIAA's administrative officers, officials, players, coaches, and other appropriate personnel for the purpose of providing FSNN with material for use in promoting the Games and its half-time, pre-game and post-game interviews, and for use in connection with FSNN's news or similar programming. Employees and agents of FSNN shall be admitted to the Site free of charge to the extent necessary to accomplish any of the above purposes, and WIAA shall provide FSNN, free of charge, any necessary working media credential(s) (exclusive of parking).

9.    INDEMNIFICATION.

Each Party agrees to hold harmless, defend, and indemnify the other against all claims, suits, actions, liens, debts, damages, costs, charges, and expenses, including court costs and reasonable attorneys' fees, and against all liability, losses, and damages of any nature whatever (a "Claim" or "Claims"), that the other Party shall or may sustain because of any material breach of any representation, warranty, agreement or other provision hereof, or out of any use of rights or material that were furnished by such Party in connection with this Agreement, or resulting from any

7

Party acts or omissions or any officer, employee, agent or subcontractor of such Party in the performance of this Agreement, on the condition that the indemnitee shall give prompt notice to the indemnitor of the applicable Claim or Claims. WIAA agrees to indemnify FSNN and hold FSNN harmless from all expenses, costs, and liabilities (including, but not limited to, legal fees and expenses) arising directly or indirectly out of suits, claims, or actions for libel, slander, copyright infringement, plagiarism, or misappropriation of rights resulting from the acts or omissions of WIAA or any officer, employee, agent, or subcontractor of WIAA in the performance of this Agreement. The provisions of this Section shall survive the termination of this Agreement.

10.  ASSIGNMENT.

Neither this Agreement nor any of the rights or obligations hereunder may be assigned by any Party without the prior written consent of the other Party; *provided, however,* that FSNN may, without such consent, assign this Agreement or any or all of its rights or obligations hereunder to its parent company, or any affiliate, subsidiary, or partnership in which it or its parent company has an ownership interest, or to any entity that acquires at least fifty percent (50%) of the assets of FSNN or the FSN North programming service. Subject to the foregoing, this Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns, and no other person shall have any right, benefit or obligation under this Agreement as a third party beneficiary or otherwise.

11.  CANCELLATION; POSTPONEMENT; FORCE MAJEURE.

If the staging, production or Telecast of any Game is prevented, canceled or interrupted due to any act of God, inevitable accident, strike or other labor dispute, fire, riot or civil commotion, threat or act of terrorism, government action or decree, inclement weather, failure of technical, production or television equipment, loss or blackout of the Telecast, or for any other reason beyond the reasonable control of WIAA or FSNN, then neither WIAA nor FSNN shall be obligated in any manner to the other with respect to such Game, but all other rights FSNN may have in this Agreement shall remain in effect and shall not be affected in any manner. If, however, any Game should be postponed, delayed or interrupted due to an act of force majeure, then FSNN shall have the right, in its sole and absolute discretion, to elect to produce and Telecast such Game on its rescheduled or continued date in accordance with all the terms hereof or to not produce and Telecast the rescheduled or continued Game, in which case FSNN shall not be obligated in any manner.

12.  REPRESENTATIONS AND WARRANTIES.

(a)     Each Party represents and warrants to the other, as to itself, that:

(i)     it has the full and unrestricted right, power and authority to enter into this Agreement and to grant the rights and privileges granted herein;

8

(ii)     the individual executing this Agreement on its behalf has been duly authorized, empowered and instructed to do so; and

(iii)    neither this Agreement, nor the performance of any duty or obligation set forth herein, violates or shall constitute a breach of or default in any judgment, decree, contract, agreement, covenant, or understanding by which it is bound or is a party.

(b)     WIAA represents and warrants to FSNN that all member schools have assigned all appropriate and necessary rights in and to the Games to WIAA.

(c)     WIAA represents, warrants and covenants to FSNN that for each Game it has obtained any and all necessary rights, clearances and/or permissions to Telecast such Game, including, but not limited to:

(i)      any necessary fees to any of the Game organizers;

(ii)     any and all clearances and/or permissions necessary for each of the participants in the Game to play in and/or appear in the Game Telecast, including, without limitation, any required clearances or permissions from any regulatory, governing or organizing body;

(iii)    securing   all   music   master,   mechanical,   performance   and synchronization rights as necessary for music played during the Game; and

(iv)     any and all rights, clearances and/or permissions necessary to use all names, likenesses, trademarks and service marks of all teams, individuals and entities participating in or otherwise associated with the Games, including, without limitation, the right to use the name, logo, symbol, seal, emblem, and insignia of WIAA and each of its member schools for purposes of the promotion of the Telecast of the Games and promotion of the FSNN and/or the FSN programming services.

Upon request, WIAA shall furnish FSNN with copies of all such licenses, clearances and permissions.

13.    FINANCIAL DISCLOSURE.

WIAA shall conform with Title 47 of the United States Code Sections 508 and 317 concerning broadcast matter and disclosures required thereunder, insofar as those Sections apply to persons furnishing program material for television broadcasting. Without limiting the foregoing, WIAA hereby certifies and agrees that it has no knowledge of any information relating to the Games that is required to be disclosed by it under Sections 508 and/or 317, that it will promptly disclose to FSNN any such information of which it hereafter acquires knowledge and that it shall not, without FSNN's prior written approval, include in the Games any matter for which any money, service, or other valuable consideration (as such terms are used in Sections 508 and/or 317) is directly or indirectly paid or promised to them by a third party, or accepted from or charged to a third party by them.

9

13.   NO COMPETING PROMOTIONAL ELEMENTS.

WIAA agrees that neither it nor any of its member schools shall promote (*e.g.,* provide camera visible signage at the Site, or any public address announcements, jumbotron, videoboard or matrix messages, etc.) any national, regional or local full-time or majority of the time sports distribution outlet (*e.g.,* ABC, ESPN, ESPNU, ESPN2, ESPN.com, ESPN Radio, CSTV, TNT, TBS, Comcast, etc.) or any affiliated entities, other than FSNN or FSN at the Games or during any Game Telecast.

14.   MISCELLANEOUS.

(a)   Headings.   Section and paragraph titles contained in this Agreement are inserted solely as a matter of convenience and for reference and in no way shall define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

(b)   Notices.   Any notices with respect to this Agreement shall be made by prepaid certified mail, return receipt requested, overnight courier service (for next day delivery), by facsimile or by personal delivery and shall be addressed to the Parties at their addresses herein contained or to such other address as a Party shall give notice to the other Party:

      (i)   As to WIAA:

          Doug Chickering
          Executive Director
          Wisconsin Interscholastic Athletic Association
          5516 Vern Holmes Drive
          P.O. Box 267
          Stevens Point, WI 54481
          Telephone: (715) 344-8580
          Facsimile: (715) 344-4241

      (ii)   As to FSNN:

          Mike Dimond
          Senior Vice President/General Manager
          Fox Sports Net North
          One Main Street, SE, Suite 600

with a copy to:     Vice President, Business and Legal Affairs
c/o Fox Cable Networks
10201 W. Pico Blvd.
Building 103, Room 3152
Los Angeles, CA 90064
Telephone: (310) 369-0474
Facsimile: (310) 969-5698

(c)     Agreement Not Contrary to Law. To the best knowledge and belief of the Parties hereto, this Agreement contains no provision that is contrary to any federal, state, or local ruling or regulation; *provided, however*, that if any provision of this Agreement, or any part hereof, shall at any time be finally determined to be invalid or unenforceable in whole or in part, under any applicable federal, state, or local law, ruling, or regulation by a court of competent jurisdiction, or by an administrative agency of the federal, state, or local government, or by an arbitrator with proper jurisdiction, then such provision or portion thereof, as appropriate, shall remain in effect only to the extent permitted, and the remaining provisions thereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

(d)     Governing Law. This Agreement and the rights and obligations of the Parties under this Agreement will be governed by and construed in accordance with the internal laws of the State of California, without reference to conflict of law provisions. Each Party irrevocably and unconditionally: (i) submits to the general jurisdiction of the federal and state courts located in Los Angeles County, California; (ii) agrees that any action or proceeding concerning this Agreement will be brought exclusively in such courts; and (iii) waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding in any such court was brought in an inconvenient court and agrees not to claim or plead the same.

(e)     Separate Entities. The Parties hereto are independent contractors. As to either Party, this Agreement does not create, nor shall be construed to create, an employer-employee, agency, partnership, or other representational relationship. No officer, employee, agent, servant, or independent contractor of either Party hereto shall be deemed at any time to be an employee, servant, or agent of the other Party hereto for any purpose whatsoever, and the Parties shall use best efforts to prevent any misrepresentation of said relationship.

(f)     Waiver. The waiver of any breach of this Agreement by either Party hereto shall in no event constitute a waiver as to any future breach, whether similar or dissimilar in nature.

(g)     Termination. In addition to FSNN's and WIAA's other rights at law and in equity, either Party may terminate this Agreement if the other Party has materially breached this Agreement and fails to cure such material breach within thirty (30) days after notice of the breach is sent by the non-breaching Party.

(h)     Entire Agreement. This Agreement contains the entire understanding among the Parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements, or conditions, expressed or implied, whether oral or written. The express terms hereof control and supersede any course of performance or usage of the trade inconsistent with any of the terms hereof. This Agreement may not be modified or amended other than by a writing signed by both Parties.

(i)     Member Schools. In all instances in this Agreement in which WIAA has incurred an obligation, it shall be understood that, if such obligation is performable only by a member school, or by another institution, WIAA shall use best efforts to cause such school or other institution to perform such obligation.

(j)     No Other Payment by FSNN. Except as specifically provided in Section 5(a) of this Agreement, FSNN shall not be obligated to make any payment to WIAA or anyone else related to the Games (*e.g.*, participants, the Site, etc.).

(k)     Approval of FSN Logo. Any use by WIAA of the FSNN or FSN logo in connection with any Game Telecast or any use of the FSNN and/or FSN name in connection with any publicity or marketing of the Games, including, without limitation, all press releases related to the Games, must receive FSNN's prior written approval no less than ten (10) days prior to any such intended use or distribution.

*(signature page follows)*

IN WITNESS WHEREOF, the Parties hereto have caused their duly authorized representatives to execute this Agreement the day and year first above written.

**FOX SPORTS NET NORTH, LLC**

By: _____

Name: Mike Dimond

Title:  Senior Vice President/General Manager

Date: __7/20/07__

**WISCONSIN INTERSCHOLASTIC ATHLETIC ASSOCIATION**

By: _____

Name: __Doug Chickering__

Title: __Executive Director__

Date: __7-13-07__

L:\Regional Sports Networks\North\Wisconsin Interscholastic Athl Assn\2007.WIAA Championships '07-'10 1d.doc



**VIP** VISUAL IMAGE PHOTOGRAPHY, INC.

# VISUAL IMAGE PHOTOGRAPHY, INC.

# WISCONSIN INTERSCHOLASTIC ATHLETIC ASSOCIATION

## 2008-13 STATE CHAMPIONSHIPS

## AGREEMENT FOR CONCESSION RIGHTS TO VEND SPORTS PHOTOGRAPHY PRODUCTS

**Prepared especially for :**
**WIAA**

**Presented To:**
**Doug Chickering**
**Executive Director**
**Todd Clark**
**Communications Director**
**WIAA**

**Presented By:**
**Tom Hayes – Owner & CEO**
**Bruce Brunner – Sales Manager**
**VIP, Inc.**

**Cedarburg, Wisconsin**
**Date Presented : October 8, 2008**



EXHIBIT
F

# VIP
### VISUAL IMAGE PHOTOGRAPHY, INC.

**Page 2**

## Obligations of VIP

- VIP shall perform all of it's obligations under this Agreement at NO COST to the WIAA.
- VIP shall be solely responsible for providing, at VIP's expense, adequate photographic personnel at the venues ("Scheduled Venues) for the sports events listed below under the heading "Events Coverage" ("Covered Events"). VIP shall be solely responsible for any product displays and signage it desires to use at Scheduled Venues for the promotion of sales.
- VIP shall document the Covered Events by capturing (where practical and consistent with sound photographic practice) images of competitor action, crowd reaction, sponsors, sportsmanship, officials and awards presentations.
- VIP will provide CDs or DVDs to the WIAA containing all photos taken from Covered Events for use in WIAA printed materials and the WIAA website. CDs or DVDs will be sent within 45 days following the completion of each State Final season.
- VIP hereby grants the WIAA the right to use any photographs taken by VIP at Covered Events in WIAA ventures such as calendars, programs and bulletins even if such ventures are operated by the WIAA at a profit.
- VIP will provide the WIAA with complimentary photographs up to and including 20X30's in size for display at the WIAA corporate offices in Stevens Point, Wisconsin.
- VIP shall pay the WIAA a commission of ten percent of gross proceeds (net of sales taxes and shipping charges) from the sale by VIP of all products utilizing images captured by VIP at Covered Events, only to the extent such revenue exceeds $1,000.00 for each of the Covered Events.
- VIP shall maintain an archive of at least three years of images while this Agreement is in force so images from prior years can be purchased.
- VIP shall handle all distribution arrangements and pay for all shipping and handling costs associated with the sale of photographic products.
- VIP shall post photographs taken on a vendor owned website in a timely manner and shall ship any purchased photographic products to customers in a timely fashion.
- VIP shall give prompt, courteous and efficient service to the public, perform work competently and be governed by the highest standards of honesty, integrity and fairness in all business dealings.
- VIP shall take no action that would reflect adversely on or injure the reputation of the WIAA. In the event the WIAA objects to any content produced by VIP, VIP shall immediately withdraw from public sale/distribution all products containing the objectionable content until such time as the WIAA's objections can be addressed and cured.



VISUAL IMAGE PHOTOGRAPHY, INC.

Page 3

- VIP shall indemnify and hold the WIAA harmless from all claims, loss and damage arising from VIP's negligent, reckless or intentional conduct in the performance of VIP's obligations under this Agreement. VIP shall be responsible for all loss or damage relating to the operation of its business.
- VIP shall maintain and pay the premiums for insurance for all aspects of VIP's business operation including insurance for public liability, product liability and personal liability.
- Nothing in this Agreement shall be construed to create an employment or agency relationship between the WIAA and VIP. VIP shall, at all times relevant herein, serve as an independent contractor to the WIAA and VIP shall not be considered an agent of the WIAA. VIP shall not act as an agent of the WIAA, nor represent directly or by implication that VIP is an agent of the WIAA or assume any obligation on behalf of the WIAA.
- VIP along with the assistance and cooperation of the WIAA, will police the activities of so-called rogue photographers who have not secured any concession rights to take State Championship photographs for sale to the general public. Each party will share any information gathered regarding any violators. The WIAA and VIP will issue a cease and desist letter to any violating parties.

## Obligations of the WIAA

- The WIAA warrants and represents that it has full authority to enter into this Agreement.
- The WIAA shall maintain a website link between the WIAA web page and the web page of VIP.
- VIP shall be designated the "Official Photography Partner" of the WIAA for each year this Agreement is in force. The WIAA guarantees VIP "exclusivity" with regard to the sale of any products using images from Covered Events, whether captured by VIP or not. The WIAA agrees to work in VIP's best interest by denying media credentials to non-news media photographers who sell any products using any image of a Covered Event.
- The WIAA shall issue a press release to all member schools announcing the renewal of the photography partnership with VIP.
- The WIAA will allow the inclusion of marketing materials, to be designed and printed by VIP, in WIAA pre-championship mailings to Athletic Directors and coaches per WIAA deadlines.
- The WIAA shall provide all necessary media credentials and parking passes to Scheduled Venues of Covered Events for photographers and staff of VIP performing its obligations under this Agreement.



**VISUAL IMAGE PHOTOGRAPHY, INC.**

**Page 4**

- The WIAA will offer an advertisement in all State Championship programs for any Covered Events at no cost to VIP. Advertisement size may vary based on program book size and space availability. VIP shall be solely responsible for designing all advertisements and providing them to the WIAA in time for program deadlines.
- The WIAA agrees to provide at least six public address and/or video announcements per contest at each Covered Event promoting VIP and its products as official photography partners of the WIAA. VIP shall be responsible for providing the WIAA with copy of the announcement contemplated in this provision.
- VIP shall be permitted to set up onsite displays and signage during each Covered Event in accordance with WIAA approval.
- The WIAA shall assist VIP in coordinating and securing team photographs and awards ceremony photographs at all Covered Events. The WIAA shall provide VIP with team information, including team rosters, season results and other similar information for use on VIP products.
- The WIAA grants VIP the right to use WIAA's proprietary marks and indicia on VIP products and marketing materials. VIP acknowledges the validity of the proprietary marks and indicia of the WIAA and acknowledges they are the sole property of the WIAA. VIP shall use the proprietary marks and indicia only in the exercise of the rights granted under this Agreement, including sales made after the expiration or termination hereof.

## Event Coverage

**Fall Sports**
**Girls Golf**
**Girls Individual Tennis**
**Girls Team Tennis**
**Girls Cross country**
**Girls Volleyball**
**Girls Swimming & Diving**

**Boys Cross Country**
**Boys Soccer**
**Boys Volleyball**
**Boys Football**



VISUAL IMAGE PHOTOGRAPHY, INC.

**Page 5**

**<u>Winter Sports</u>**
**Girls Hockey**
**Girls Gymnastics**
**Girls Basketball**

**Boys Swimming & Diving**
**Boys Wrestling**
**Boys Hockey**
**Boys Basketball**

**<u>Spring Sports</u>**
**Girls Track**
**Girls Soccer**
**Girls Softball**

**Boys Individual Tennis**
**Boys Team Tennis**
**Boys Track**
**Boys Golf**
**Boys Spring Baseball**
**Boys Summer Baseball**

## Company Representatives Handling the Project
- Tom Hayes – President & CEO
- Michael Barton – CFO
- Bruce Brunner – Sales Manager
- Brian Hurley – Chief Photographer
- Jennifer Fredericks – Customer Service
- Meghan Blaney – Graphics Designer



**VISUAL IMAGE PHOTOGRAPHY, INC.**

Page 6

## Term of the Agreement

This document sets forth an Agreement between the Wisconsin Interscholastic Athletic Association ("the WIAA") and Visual Image Photography, Inc. ("VIP") regarding photography and related services to be provided by VIP beginning October 1, 2008 and ending September 30, 2013. This Agreement may be terminated without cause by either party upon written notice given not later than July 1 in any year during the term hereof, to be effective as of September 30 of such year.

_____          Executive Director          10-21-08
WIAA Representative               Position                    Date

_____          President                   11-12-08
VIP Representative                Position                    Date



All photos courtesy of VIP

2008-09 Media Policies
Reference Guide

EXHIBIT

G

# Table of Contents

Introduction ........................................................................................................................................ 1
General Policies .................................................................................................................................. 1
Credentials ......................................................................................................................................... 1
    Requesting Credentials ................................................................................................................... 2
    Credential Provisions ...................................................................................................................... 2
    Credential Pick-up ........................................................................................................................... 3
    Credential Maximum Request Limits ............................................................................................. 3
    Credential Request Deadlines ......................................................................................................... 4
Member School Photo Credentials ..................................................................................................... 5
Parking Permit Ordering Policies ....................................................................................................... 5
Communications Lines ........................................................................................................................ 5
Photography Provisions ....................................................................................................................... 6
    Photography Locations .................................................................................................................... 6
Post-Game Interview Policies ............................................................................................................. 8
Radio, Television and Cable Policies ................................................................................................ 10
    Applying for Regional and Sectional Radio Rights ..................................................................... 10
    Applying for Regional and Sectional Television/Web/Cable Rights ........................................... 11
    Radio/Television/Web/Cable Regulations and Definitions .......................................................... 11
    Radio Priority Criteria .................................................................................................................. 12
    Television Priority Criteria ........................................................................................................... 13
Internet Policies ................................................................................................................................ 13
    Applying for Internet Media Credentials ..................................................................................... 13
    Applicable Regulations and Definitions ...................................................................................... 13
Advertising ........................................................................................................................................ 15
Broadcast Rights Permissions/Fees .................................................................................................. 16
Application for Radio/Internet Broadcasting of WIAA Tournament Games .................................... 17
Media Credential Request Form ....................................................................................................... 18
Radio High School Sports Directory ................................................................................................ 19
Television High School Sports Directory.......................................................................................... 29
Newspaper High School Sports Directory ........................................................................................ 31

# WIAA Executive Staff

| | | |
|---|---|---|
| Douglas E. Chickering, Executive Director | Ext. 306 | e-mail < dchickering@wiaawi.org > |
| Dave Anderson, Deputy Director | Ext. 314 | e-mail < danderson@wiaawi.org > |
| Debra Hauser, Associate Director | Ext. 319 | e-mail < dhauser@wiaawi.org > |
| Tom Shafranski, Assistant Director | Ext. 310 | e-mail < tshafranski@wiaawi.org > |
| Marcy Thurwachter, Assistant Director | Ext. 311 | e-mail < mthurwachter@wiaawi.org > |
| Todd Clark, Communications Director | Ext. 320 | e-mail < tclark@wiaawi.org > |

**WISCONSIN INTERSCHOLASTIC ATHLETIC ASSOCIATION**
**5516 Vern Holmes Drive, P.O. Box 267, Stevens Point, WI  54481-0267**
**Telephone (715) 344-8580  –  FAX (715) 344-4241**
**e-mail:  info@wiaawi.org     Web site:  http://www.wiaawi.org     Web Portal:  http://www.wiaa.tv**

# Introduction

The Wisconsin Interscholastic Athletic Association acknowledges the responsibilities of legitimate news gathering media representatives in covering and reporting from WIAA-sponsored tournaments. We recognize and appreciate the interest and promotion generated by media coverage and the recognition given to the achievements of school teams and student-athletes.

The WIAA Media Policies Reference Guide is produced to inform statewide media of WIAA policies in effect for all levels of State Tournament Series competition and assist members of the media in providing comprehensive coverage to their communities.

All members of the media are responsible for reviewing the policies included in this reference guide. Policies contained in this guide refer to television, radio, print and internet media. These policies are not extended to regular-season interscholastic competition, but are effective at the start of post-season WIAA Tournament Series competition.

For more information, please contact us at:

**Todd Clark, Director of Communications**
Wisconsin Interscholastic Athletic Association
5516 Vern Holmes Dr.
Stevens Point, WI 54481
(715) 344-8580/fax (715) 344-4241
e-mail: tclark@wiaawi.org

**Joan Gralla, House Manager**
Wisconsin Interscholastic Athletic Association
5516 Vern Holmes Dr
Stevens Point, WI 54481
(715) 344-8580/fax (715) 344-4241
e-mail: jgralla@wiaawi.org

# General Policies

The WIAA has established regulations and guidelines to assist media with the requesting/issuing of working media credentials, parking permits, the use of equipment by news gathering media and the comprehension of WIAA property rights for State Tournament Series competitions.

Any noneditorial, commercial or other unauthorized use of any transmission, internet stream, photo, image, film, videotape, audio tape, writing, drawing or other depiction or description of any game, game action, game information (including game statistics), player interview, venue-associated activity, and any non-editorial or commercial use of any team school name or logo, is prohibited without written consent of the WIAA.

# Credentials

Media credentials and accommodations for regional, sectional and State Tournament competitions are not transferable or for sale under any circumstances.

Requests for credentials must be made in accordance with WIAA policies through a legitimate newspaper, radio/TV station, magazine, internet network or recognized news-gathering organizations as determined by the WIAA. Credentials are reserved for adult members of the media only. The WIAA reserves the right to request company letterhead when determined necessary to verify credential requests.

Media requesting credentials to WIAA State Tournament events must submit a completed Credential Request Form. An on-line submittable form is located on the restricted area of the WIAA Media Center Web site. The form is also located in this guide (page 18) and in the WIAA Media Guides. Please submit the form by the published deadlines (see page 4).

The WIAA retains the right and sole discretion to confiscate and deny future credentials to any media organization or individual not adhering to WIAA policies stated in this manual. Credentials are issued by the WIAA to media organizations

to provide access for an individual or individuals who have a legitimate working relationship with an accredited media organization (as determined by the WIAA) in connection with the event for which the credential is issued.

By requesting and accepting the use of a WIAA credential, the media organization, its personnel and agents, together agree the bearer of the credential is performing a legitimate working function in attending the event. The credential is for use only in connection with the bearer's news and editorial coverage of the event.

# Requesting Credentials

Requests for media credentials will be accepted and issued to members of the media and media organizations based on the following conditions:

1.  Credentials for all regional and sectional levels of the Tournament Series will be issued by the tournament manager at the school hosting the event. All media are required to contact the host school athletic director or host tournament manager in advance of the event to make arrangements for credentials. Failure to contact host managers/athletic directors in advance may result in denied media privileges at tournament events.

2.  Credential requests for State Tournaments must be submitted on a completed Credential Request Form. An on-line submittable form is located on the restricted area of the WIAA Media Center Web site. The form is also located in this guide (page 18) and in the WIAA Media Guides. Please submit the form by the published deadlines (see page 4). Forms submitted on-line are preferred. Email requests may also be accepted; however, any information or request not provided in an email that pertains to credential requests and accommodations as noted on the "Credential Request Form" (i.e. parking, phone line, etc.) will not receive consideration.

3.  No credential requests or accommodations will be approved for persons not employed on staff or as freelance by contract of a recognized media organization. **Credentials must not be requested for and will not be granted to coaches, former coaches, family, friends or family of participants not employed by the requesting media organization.**

4.  Requests must be received in the WIAA office no later than noon two days before the start of the respective State Tournament event (see "Credential Request Deadlines" section). **REQUESTS RECEIVED AFTER DEADLINES WILL NOT BE CONSIDERED.** In addition, no credentials will be issued to media that arrive at State Tournament venues without having verification by the WIAA of a credential request made by the prescribed deadline.

5.  Verification of approved media credential requests will be posted on the restricted area of the WIAA Media Center Web site the morning of the credential request deadline date.

6.  Any substitutions of approved credentials must be done by sports directors or editors contacting the WIAA prior to arriving at the State venue at (715) 344-8580.

7.  The WIAA reserves the right and sole discretion to revoke current and deny future credentials to any media organization in violation of any WIAA media policies or provisions of credentials. Media organizations that violate credential policies are subject to legal liability, as well as all costs incurred in enforcing the terms of these policies, including but not limited to reasonable attorney fees.

8.  Permission for local cable operators in relation to videotaping or airing Tournament Series events must be done by contacting When We Were Young Productions (608) 849-3200 ext. 225. Credentials will not be granted to cable operators not receiving clearance from WWWY Productions.

# Credential Provisions

1.  The WIAA authorizes the number of credentials issued to any media organization. The WIAA media credential is issued to members of legitimate media outlets that have a professional working function (as determined by the WIAA) at WIAA State Tournament venues and events. The credential provides access to specified locations, venues and events for which the credential was issued. At certain tournaments, some areas may be restricted for radio, television, news print and photographers.

2. Credentials must be worn and displayed at all times while at the tournament venue for which the credential is issued.

3. Transfer or sale of credentials is prohibited and will result in immediate confiscation of credential and/or possible denial of future credentials to individual perpetrators or their affiliated media organization as determined by the WIAA.

4. The media work areas are available for professional working members of the media. Cheerleading in press boxes and media seating is unprofessional and will not be tolerated. Violators will have their media credentials revoked and be escorted out of the media area or press box by WIAA or security personnel.

5. Children, spouses and friends of media that are not officially employed by a media outlet are not permitted in media areas during or immediately following contests.

6. Any member of the media believed to be intoxicated, under the influence of mood-altering substances or acting in an unprofessional manner as determined by WIAA personnel will have their media credentials revoked and be escorted out of the media area with possible denial of future credentials to individual perpetrators and/or their affiliated media organization as determined by the WIAA.

7. A media credential does not allow access to team or participant locker rooms before, during or after any State Tournament competition. Coaches and participants may be available for interviews directly outside the locker rooms.

# Credential Pick-up

All approved credentials can be picked up at the tournament venues. No credentials will be mailed prior to the tournaments. A photo ID may be required to claim passes at certain State Tournament venues. Please be prepared to show photo ID to receive all State media credentials.

Approved credentials will be placed in individual envelopes identified with each bearer's name. Credentials will be made available for pick-up at State venues approximately 1 hour, 30 minutes prior to the start of each day's competition.

For events at the Kohl Center (individual wrestling, boys basketball), credentials will be available at the Mifflin Street entrance to Lot 91. For events at Camp Randall Stadium (football), credentials can be picked up at the entrance to the parking ramp (Lot 17) on Engineering Drive. For events at the UW Field House (team wrestling), credentials will be available at the Gate C entrance to the Field House. Locations for credential pick-up may change. Any changes in credential pick-up locations will be communicated in State preview releases.

Credential pick-up at other State venues will be located at the designated "Will-Call" window. The "Will-Call" window at the Alliant Energy Center for State hockey is located at the east side ticket windows and located at the west side entrance for State girls basketball. Credential pick-up at other State Tournament venues are conveniently located at media entrances to restricted media areas.

# Credential Maximum Request Limits

**Television (not play-by-play):** For TV stations covering the State Tournament for newscast purposes and not live broadcast, a maximum of two (2) credentials will be issued. An exception of three (3) credentials for TV stations located in the tournament host community will be permitted. Also see "Television/Cable Broadcast Policies."

**Cable Access:** Access for local cable access channels covering the State Tournament events can only be obtained through When We Were Young Productions. WWWYP will make arrangements for WIAA credentials.

**Radio:** A maximum of two (2) credentials will be issued to stations doing play-by-play of WIAA Tournament Series events. Any additional credentials must be approved by the WIAA. A maximum of one (1) credential will be issued for filing live reports or not originating any broadcasts or reports.

**Daily Newspapers:** For daily newspapers, a maximum of five (5) credentials, including photographers, will be issued to papers with a paid circulation of 30,000 or more. Daily papers under 30,000 paid circulation may receive a maximum of four

3

(4) credentials if teams in their primary coverage area are participating, and a maximum of two (2) credentials will be issued to dailies with under 30,000 paid circulation with no participating teams in their primary coverage area. Additional credential requests will be reviewed to determine if appropriate by the WIAA.

**Weekly Newspapers:** Weekly newspapers may be issued a maximum of two (2) credentials (including photographer) if teams competing are in their primary coverage area. A maximum of one (1) credential will be issued to weekly papers with no competing teams in their primary coverage range as determined by the WIAA.

**Web site:** Legitimate news gathering Web site organizations posting original content and information in a timely (daily) manner as determined by the WIAA may receive a maximum of two (2) credentials. Additional credential requests will be reviewed and determined if appropriate by the WIAA. Fan-based Web sites as determined by the WIAA will not be granted credentials. See credential criteria in "Internet Policies" section (page 13).

**Specific Sports Publications:** Legitimate sport-specific publications as determined by the WIAA may receive a maximum of three (3) credentials for their respective sport's State Tournament.

**Photographers:** Photographers without affiliation to any media organizations (i.e. professionals, yearbooks, etc.) will not be granted media credentials (also see "Photography Provisions" section).

Please contact Todd Clark or Joan Gralla at the WIAA with any special media credential requests (715) 344-8580.

# 2008-09 Credential Request Deadlines

| **Fall Sports** | **Tournament Dates** | **Credential Deadline** |
|---|---|---|
| Golf (Girls) | Oct. 13-14, 2008 | Noon, Oct. 10, 2008 |
| Tennis (Girls), Individual | Oct. 16-18, 2008 | Noon, Oct. 14, 2008 |
| Tennis (Girls), Team | Oct. 24-25, 2008 | Noon, Oct. 22, 2008 |
| Cross Country | Nov. 1, 2008 | Noon, Oct. 30, 2008 |
| Soccer (Boys) | Nov. 6-8, 2008 | Noon, Nov. 4, 2008 |
| Volleyball (Girls) | Nov. 6-8, 2008 | Noon, Nov. 4, 2008 |
| Swimming & Diving (Girls) | Nov. 14-15, 2008 | Noon, Nov. 12, 2008 |
| Volleyball (Boys) | Nov. 14-15, 2008 | Noon, Nov. 12, 2008 |
| Football | Nov. 20-21, 2008 | Noon, Nov. 18, 2008 |
| | | |
| **Winter Sports** | **Tournament Dates** | **Credential Deadline** |
| Swimming & Diving (Boys) | Feb. 20-21, 2009 | Noon, Feb. 18, 2009 |
| Wrestling, Individual | Feb. 26-28, 2009 | Noon, Feb. 24, 2009 |
| Hockey | March 5-7, 2009 | Noon, March 3, 2009 |
| Gymnastics | March 6-7, 2009 | Noon, March 3, 2009 |
| Wrestling, Team | March 6-7, 2009 | Noon, March 3, 2009 |
| Basketball (Girls) | March 12-14, 2009 | Noon, March 10, 2009 |
| Basketball (Boys) | March 19-21, 2009 | Noon, March 17, 2009 |
| | | |
| **Spring/Summer Sports** | **Tournament Dates** | **Credential Deadline** |
| Tennis (Boys), Individual | June 4-6, 2009 | Noon, June 2, 2009 |
| Track & Field | June 5-6, 2009 | Noon, June 3, 2009 |
| Golf (Boys) | June 8-9, 2009 | Noon, June 5, 2009 |
| Soccer (Girls) | June 11-13, 2009 | Noon, June 9, 2009 |
| Softball | June 11-13, 2009 | Noon, June 9, 2009 |
| Tennis (Boys), Team | June 12-13, 2009 | Noon, June 9, 2009 |
| Baseball (Spring) | June 16-18, 2009 | Noon, June 14, 2009 |
| Baseball (Summer) | July 29-30, 2009 | Noon, July 27, 2009 |

## Member School Photo Credentials

The WIAA does not provide media credentials to member schools for students of schools advancing to the State Tournaments. However, each school that qualifies a team for the State Tournament is permitted one (1) "Student Photographer" credential in sports where applicable. A ticket must be purchased and a letter from the principal or athletic director identifying the individual as the recipient of the "Student Photographer" credential is required.

Only schools of competing teams may receive a student credential to photograph or tape a State Tournament event in applicable sports. Tapes or photos may not be sold, rented, loaned, loaded to the Web site or shared with other schools or local cable access stations. Any commercial sponsorship or financial gain from tapes is prohibited. Violation of this policy will subject the school to the broadcast rights fee.

A school which designates any outside entity for its "Student Photographer" pass forfeits the right to send its own film or video photographer to the State Tournament.

# Parking Permit Ordering Policies

For most WIAA State Tournaments, media may utilize and purchase existing general parking at the venues. For events at the Kohl Center and Camp Randall in Madison, Wis., members of the media may request to purchase, at cost, parking permits from the WIAA.

Parking permits available through the WIAA are assigned on the basis of need and/or in order of requests. Any requests made for parking after the prescribed credential request deadline (see "Media Credential Request Deadlines" section) for the respective tournament may not be available.

All requests for parking will receive and be charged for all sessions of a tournament unless otherwise noted on the "Media Credential Request" form by the requesting media. Parking for subsequent games if a team in a media organization's coverage area wins or loses will be included and organizations will be charged regardless if the permits are used or not.

Requested parking permits will be included in an envelope with media credentials for events at the Kohl Center and Camp Randall (see "Credential Pick-up Policies" section). The media requesting parking permits should indicate on the "Credential Request Form" which individual(s) receive parking permits if parking requests are fewer than credential requests.

The WIAA reserves the right to refuse parking to any media organization failing to pay for parking ordered at any previous tournaments. The WIAA will invoice media organizations for parking fees following the tournaments.

# Communication Lines

The WIAA secures a number of telephone, high-speed lines or wireless connections at State Tournament venues. All lines requested through the WIAA are shared lines. No dedicated lines throughout an entire tournament will be provided unless arrangements are made to install a dedicated line at cost to the media organization requesting the line (see "note" on page 6). Play-by-play radio broadcasts may request use of a phone line during their broadcasts at a cost indicated on the "Credential Request Form." Radio stations filing live reports will utilize "available lines" to file reports. Please indicate on the Credential Request Form if you plan to use a cell phone for broadcast or reports to help avoid invoicing for line usage fees.

Communication connection usage fees are $25 for newspapers filing stories from State venues, $25 for radios using phone lines to file live or taped reports back to stations, $25 for internet companies using the lines to upload information on a regular basis but not on a continuous basis and $75 for stations calling play-by-play for a game or segment of a game.

5

**Note:** Any media requesting or requiring to guarantee a dedicated line (exclusive line) for continual use during an entire tournament must make arrangements for the installation and charges with the host venue and telecommunications company and notify the WIAA. Media outlets with pre-existing dedicated lines at host venues will have those lines reserved for its use. However, seat locations adjacent to a media's dedicated phone jack is not guaranteed based on available media seating.

# Photography Provisions

Guidelines and policies for photographers at WIAA State Tournaments and during the Tournament Series are determined by the WIAA and based on the nature of the activity and venue, and the official rules of the activity. Photographs taken with the issuance of credentials are strictly restricted to editorial and non-commercial uses and are restricted to newspapers, news and sports-related periodicals and Web sites, except with written consent of the WIAA Executive Staff. No resale of digital image files, photos, videotape or film by media organizations is permitted without written consent of the WIAA. The only permitted resale of images and/or photographs are those actually included and distributed in printed publications. Photographers issued WIAA credentials must adhere to all WIAA photography policies and provisions outlined in this section.

Photographs taken with the authoritative use of the media credential by news gathering media outlets are strictly for editorial, non-commercial use only. A license authorizing the sale of photographs of WIAA pre-State Tournaments (regionals and sectionals) is available through WIAA for a yearly fee of $100. Please contact the WIAA if interested.

Any sale of photography, digital image files, videotape or film taken at State Tournament Series events is prohibited without written consent of the WIAA. Any photos, images or video taken with WIAA credentials are subject to rights, if any, of all third parties, including the individuals photographed.

Use of flash equipment and strobe lighting is permitted at all State Tournaments except the gymnastics championships, provided the use of such equipment does not interfere with or disrupt any action or administration of the event. It is the authority of the WIAA to determine if flash equipment is interfering or disrupting play at the State Tournament and the authority of game officials and tournament management at pre-State tournaments. Media intending to use flash and strobe equipment should meet with officials and tournament managers prior to regional and sectional contests to avoid potential problems.

During post-game celebrations and awards ceremonies, only the official WIAA photographer and the entity possessing the exclusive television broadcast rights are allowed inside the ceremony perimeter (as determined and controlled by WIAA personnel). All other photographers must remain at the ceremony perimeter.

Loose equipment bags or tripods are not allowed at courtside, on the sideline or in competition areas. Photographers must remain in areas designated for photographers as determined by the WIAA (see "Photographer Location Policies" section).

Photographers are prohibited from shooting in spectator areas that obstruct the view of spectators in their ticketed seats.

## Photography Locations

The following outline provides the photography policies and the locations available for photographers at each sport's State championship venue. Please refer to the media instructions in State Tournament media packets at each State venue for additional information or changes to policies.

**Baseball** - National Federation rules prohibit media photographers from being present in any live ball areas. Photographers must remain in designated photo areas as determined by the WIAA. The designated photo areas at Spring Baseball are located in the photography box on the outfield side of the dugouts along the first and third base lines. The designated photo areas at Summer Baseball are located inside the fence on the outfield side of the dugouts along the first and third base lines. These locations are identified with a chalk outline. Access to the field is available during award ceremonies.

**Basketball** - Only photographers with properly displayed media credentials will be allowed access to courtside photo areas. These areas are at the edge of the court along the ends of the court, from the corner of the court to the free throw lane extended to the edge of the floor on each side of the baskets. No photographers are allowed on the floor along the sides of the court (along team benches and media row). Photographers must sit or kneel when the game is in progress. No television or press photography is allowed on the court during pregame warm-ups, during announcing of the starting lineups or anytime during the game with the exception of the official WIAA network and videographers.

**Cross Country** - Photographers with cameras and credentials will be allowed inside spectator ropes and restraining fences in designated areas for race starts and finishes as determined by the WIAA. Crossing in front of runners during the race on the course is strictly prohibited. At the finish chute, photographers must stay in designated roped-off areas. Photographers must stay out of all sand traps and off tee boxes and greens.

**Football** - Photographers will be allowed access to the sidelines with properly displayed credentials. Photographers are allowed behind the dotted line from the 30-yard line to the end zone and along the back end of the end zone. Photographers are not allowed in the team areas (30-yard line to 30-yard line) except for the official WIAA videographer, but may pass through the back of the team box to get to the other end of the field. However, they are not allowed to stop in the team area.

**Golf** - Photographers with properly displayed credentials may follow golfers. Photographers must shoot from the rough or cart paths, taking extreme caution not to interfere with contestant sight lines or disturb play in any manner as determined by the WIAA.

**Gymnastics** - This is the only tournament that prohibits flash and strobe photography because of the potential safety hazard to gymnasts. Photographers must remain outside the perimeter of the judges and must leave the floor after the event they are shooting is completed or when the gymnast has finished her routine. Photographers must refrain from moving at locations near apparatus during routines.

**Hockey** - Photographers with properly displayed credentials may shoot from nearly any location at the Coliseum where spectator views are not blocked. However, photographers other than the official WIAA photographer and videographer, are prohibited from shooting from the penalty box, team bench areas, the goal judge area and the player entrance areas.

**Soccer** - Photographers are prohibited from entering the playing field at anytime during a game, including shootouts. Photographers with properly displayed credentials are allowed to shoot during play on the sidelines and on the end lines directly inside ropes and fences not to encroach the sideline of the soccer field with the following two exceptions. Photographers are prohibited from shooting in the area directly behind the goal/penalty area on each end of the field during action or in front of the official bench and team benches at any time. It is permissible for photographers to move onto the playing area for pictures before and after games, during halftime and during intermissions between overtime periods.

**Softball** - National Federation rules prohibit media photographers from being present in any live ball areas. Photographers must remain in designated photo areas off the playing field as determined by the WIAA. The designated photo areas at Goodman Diamond are outside the fence in the opening between seating areas along the first and third base lines. In addition, photographers can shoot outside the fence down the lines in the outfield and in the designated camera area in the stands behind home plate. Access to the field is available during award ceremonies only.

**Swimming & Diving** - Photographers with properly displayed credentials may shoot from the designated areas on the pool deck and behind any roped-off areas. Permissible photographer areas are located on the control side of the pool, behind the timers' chairs and at the contestant seating area at the end of the pool opposite the starting blocks. Photographers are not allowed on the walkway where the awards stand is located or near the diving pool. Television photographers and photographers using flashes/lights pointed at the swimmers during turns, exchanges and starts are prohibited.

**Tennis** - Photographers with properly displayed credentials may shoot from nearly any location of the Stadium where spectator views are not blocked. No photography is permitted at courtside during matches. Media wishing courtside photos during warm-ups are required to request access from WIAA personnel prior to entering courts. Flash photography at courtside during warm-ups must receive permission from WIAA officials.

**Track & Field** - Updated guidelines for photographers at the new Veterans Memorial Stadium will be developed and communicated leading up to the State Meet. Access to the infield will be limited to photographers only and only in the designated areas. Anyone with a media or photo credential not shooting photography in these areas will be removed from the infield. In addition, any media photographer taking pictures from the infield outside of these prescribe areas will be removed. Access to all other field events are identical to spectators.

**Volleyball** - Photographers with properly displayed credentials may shoot from off the Sport Court floor on the side opposite the team benches during the entire tournament. Photographers may also shoot from off the court on each end during championship finals. Photographers must wait for a stoppage in play to move to other areas at each end of the courts.

**Wrestling** - Photographers with properly displayed credentials may shoot from designated areas at mat side at both team and individual tournaments. Photographers must remain off the mat and must vacate the area after the match they are shooting is completed. Television photographers are prohibited from using lights pointed at or near the mat.

# Post-Game Interview Policies

No media is allowed on the floor or field for post-game/event interviews immediately after State Championship team contests, or before or during the awards ceremonies except for WIAA contracted services. The nature of each sport will determine the interview policy following State Tournament events as outlined for each sport as determined by the WIAA.

After all WIAA Tournament contests, the WIAA strongly encourages media to honor a five-minute "cooling off" period prior to interviewing participating coaches and players.

No media is allowed access to team or participant locker rooms before, during or after any State Tournament competition. Coaches and participants may be available for interviews directly outside the locker rooms. The following list outlines each sport's State Tournament post-contest interview policies.

**Baseball** - Members of the media wishing to interview coaches and participants following the State award ceremonies or after quarterfinal and semifinal games can locate and direct coaches and participants to a location off the field not to interfere with warm-ups of the next game or the administration of the event. Following the final game scheduled for each day, interviews may take place at a convenient location anywhere on the field. No interviews are allowed during pre-game warm-ups or during the contest without prior consent of the WIAA executive staff.

**Basketball** - A post-game media conference will take place in the media work room during the boys and girls State Tournaments. The coach and selected player(s) of the winning team will participate in an eight-minute media conference immediately following a live TV interview (5 minutes) after the game or after the awards ceremony if it is the championship game. The coach and player(s) of the losing team will follow with an eight-minute conference. The coach of the winning team may only participate in a brief on-court interview by the entity with exclusive telecast rights following each game prior to the media conference. No other interviews of coaches or participants are allowed prior to their participation in the media conference. Members of the media are allowed to interview willing coaches and participants following the media conference at a location outside the locker room. Consideration for team time schedules, as well as administrative and facility staffing expectations is appreciated following news conferences. No interviews are allowed during pre-game warm-ups, halftime or during the contest without consent of the WIAA. On occasion, WIAA personnel may allow for a brief television interview with a coach prior to the media conference by stations with a local team (as defined and determined by the WIAA) participating for newscast deadline relief purposes.

**Cross Country** - Members of the media wishing to interview coaches and participants may do so after runners have gone through the chutes and have entered the fenced-in area provided. Members of the media are allowed to interview coaches and participants following the State award ceremonies. No interviews are allowed with coaches or runners within 20 minutes prior to the start or during their respective races. Media personnel must stay out of all sand traps and off tee boxes and greens.

**Football** - Members of the media wishing to interview coaches and participants following the State award ceremonies can locate and direct coaches and participants to the area at the north end of the field immediately in front of the north bleachers, not near the playing field to avoid interfering with warm-ups of the next game or the administration of the event. No interviews are allowed during pre-game warm-ups, during the contest or immediately after the game without consent of the WIAA. The coach of the winning team may participate in a brief on-field interview by television with exclusive telecast rights following each game and/or immediately after the award ceremony.

**Golf** - Members of the media wishing to interview coaches and participants following the State award ceremonies or after rounds can locate and direct coaches and participants to a location away from the greens not to distract or interfere with play still in progress.

**Gymnastics** - Members of the media wishing to interview coaches and participants following the State award ceremonies or between rotations can locate and direct coaches and participants to a location away from apparatus not to interfere with warm-ups, the next rotation or the administration of the event. Following the final event scheduled for each day, interviews may take place at a convenient location anywhere in the gymnasium. No interviews are allowed during timed warm-ups or during an event.

**Hockey** - In absence of a possible post-game media conference, members of the media wishing to interview coaches and participants following the State award ceremonies or after quarterfinal and semifinal games can locate and direct coaches and participants to a location off the ice, preferably outside each respective team's locker room. No interviews will be allowed on the ice or in the team bench area. Following the final game scheduled for each day, interviews may take place at a convenient location anywhere not on the ice, team bench or inside the locker rooms. No interviews are allowed during pre-game warm-ups or during the contest.

**Soccer** - Members of the media wishing to interview coaches and participants following the State award ceremonies or after quarterfinal and semifinal games can locate and direct coaches and participants to a location off the playing field not to interfere with warm-ups of the next game or the administration of the event. Following the final game scheduled for each day, interviews may take place at a convenient location anywhere on the field. No interviews are allowed during pre-game warm-ups or during the contest.

**Softball** - Members of the media wishing to interview coaches and participants following the State award ceremonies or after quarterfinal and semifinal games can direct coaches and participants to outside the field access gate in the right field corner, not to interfere with warm-ups of the next game or the administration of the event. No interviews are allowed during pre-game warm-ups or during the contest.

**Swimming & Diving** - Members of the media wishing to interview coaches and participants following an event or State award ceremonies can locate and direct coaches and participants to a location at the control side of the pool deck or off the pool deck not to interfere with events in progress or administration of the meet.

**Tennis** - Members of the media wishing to interview coaches and participants following a match or State award ceremonies can locate and direct coaches and participants to a location off the playing court areas not to interfere with matches in progress or administration of the event.

**Track & Field** - Members of the media wishing to interview coaches and participants following an event or State award ceremonies can locate and direct coaches and participants to a location anywhere except on the infield of the track. Following awards ceremonies, those student-athletes receiving medals will be escorted and made available for interviews in the media work area located at the southwest end of the track.

**Volleyball** - Members of the media wishing to interview coaches and participants following the State award ceremonies or after quarterfinal and semifinal games can locate and direct coaches and participants to a location away from the playing courts not to interfere with warm-ups of the next game or the administration of the event. Following the final game scheduled for each day, interviews may take place at a convenient location off the playing courts in the general direction of the respective locker rooms. No interviews are allowed during pre-game warm-ups or during the contest.

**Wrestling** - Members of the media wishing to interview coaches and participants following a match or State award ceremonies can locate and direct coaches and participants to a location not interfering with the matches in progress or administration of the event. Preferred interview areas are in the corridors below the grandstands in the Kohl Center and in the corridor below the grandstands at the UW Field House.

# Radio, Television and Cable Policies

By submitting the application for broadcast, stations agree to abide by all WIAA regulations and policies regarding the broadcast of events during the entire WIAA Tournament Series to include prohibited advertising and sponsorships as determined by the WIAA as outlined in the "Advertising" section.

WIAA radio, television, cable and internet policies relate to broadcasts during the WIAA State Tournament Series. There is no WIAA jurisdiction over regular-season radio, television, cable or internet broadcasts of high school interscholastic competition, but school administrators are strongly encouraged to prohibit sponsors for broadcasts whose primary business is the sale of tobacco, alcohol, lottery/gambling, mood-altering substances or lewd subject matter.

No fees for regular-season broadcasts are required by the WIAA, but local schools and participating teams may wish to require a fee or to recover any expenses incurred (i.e. power, scaffolding, seats lost due to camera positions, tickets sales lost by spectators staying home and watching, etc.).

The WIAA reserves the right to require two minutes of advertising or promotional inventory to be included in any or all radio or television broadcasts, as well as Web casts of WIAA Tournament Series events as determined by the WIAA.

Radio, television and cable stations and operators also considering streaming audio or video on the internet must abide by all internet policies as written in this guide (see "Internet Policies"). There is no fee for live report "updates" of pre-State Tournament events provided no play-by-play is done. There is a $25 fee for live or taped radio reports from State Tournament venues.

All radio and internet streaming broadcast rights and credential requests for all State Tournaments will be issued by the WIAA. To apply for play-by-play or live report "update" rights for State Tournament events, radio stations must complete and submit the "Media Credential Request" form located in the back of this publication or in the WIAA Media Guides (make copies of the form). Completed forms with station manager or sports director signature must be faxed to the WIAA by noon at least two business days before the first day of a given tournament or as outlined in the "Credential Request Deadline" section of this guide. Please review the "Requesting Credentials" section for additional credential request policies.

Television stations and cable operators must make arrangements with When We Were Young Productions (608) 849-3200 ext. 225 to inquire about television broadcast or internet video streaming permission prior to the date of the contest. Entities not adhering to permission policies are subject to fines imposed by the rights holder.

## Applying for Regional and Sectional Radio Rights

1.  To apply for play-by-play and live report broadcast rights for regional and sectional events, radio stations must complete the "Radio/Internet Broadcasting Application" located on page 17 of this publication or in the WIAA Media Guides (make copies of the applications). Completed applications for broadcast with station manager signature should be mailed or faxed to the tournament site and the WIAA at least two days before the first game of a given tournament. Host managers must receive approval from the WIAA to reject any applications to broadcast. Stations are required to contact host tournament managers to notify of their intentions to broadcast any contest(s) during a regional or sectional and make arrangements for entry access. Host managers are expected to furnish free admission for two working persons.

2.  Stations are no longer required to include a list of sponsors and advertisers with the application. However, advertising of tobacco, lottery/gambling, alcoholic beverages, mood-altering substances or lewd subject matter or businesses whose

10

primary purpose is the selling of products prohibited by the WIAA as described in the "Advertising" section during broadcasts are prohibited (see "Advertising" and "Applicable Radio Regulations and Definitions" sections).

# Applying for Regional and Sectional Television/Web/Cable Rights

1.  Live or tape-delayed television broadcast rights for regional and sectional events by television stations, cable operators and internet sites is prohibited without consent of When We Were Young Productions.

2.  Accommodations for working television or cable personnel, cameras and other equipment involved in broadcast production is the responsibility of the host tournament manager, provided the television stations, cable operators or Web stream entities receive permission from When We Were Young Productions to broadcast/stream in advance.

3.  Media sending a reporter to cover the WIAA Tournament Series for newscast purposes should practice the professional courtesy to contact tournament host managers with their intent to cover the event. Failure to notify tournament managers in advance may result in denied media privileges at tournament events.

# Radio/Television/Web/Cable Regulations and Definitions

A "broadcast" is defined as the airing/streaming or intent of airing/streaming the entire duration of tournament games or complete session of games from the time the broadcast/stream begins to the time the broadcast/stream ends at the tournament site. This definition includes halftime, between games of a session, immediately before and after a tournament game or session, and during intermission stops and timeouts.

A "non-commercial broadcast or Web stream," defined for the purpose of rights fees assessment, is one that contains no commercials or sponsorships during the entire duration of tournament games or complete session of games from the time the broadcast begins to the time the broadcast ends at the tournament site. This definition prohibits commercials or sponsorships during halftime, between games of a session, immediately before and after a tournament session, and during intermission stops and timeouts. However, a station may return to its studio at halftime or between games of a session to air regularly scheduled programs with its normal advertisers and sponsors.

Live Report "updates" are airing/streaming updates on results or general information about the competition or event but contains no play-by-play description of live contests.

"State Tournament Series," "Tournament Series" and the "WIAA Tournament" refers to all the WIAA sponsored events contested at the regional, sectional and State levels.

Stations or internet entities will not receive a reduced fee by dividing a session into one game on a commercial basis and another on a non-commercial or commercial-delayed basis.

Broadcast and Web streaming rights fees (page 16) are applicable for stations and/or Internet sites that pick-up live or delayed feeds from another station, Web site or cable operator.

The WIAA reserves the right to revoke or deny the broadcast or streaming rights of any stations or operators that includes in any part of its broadcast of WIAA Tournament events, including pregame and postgame shows, content or comments considered inappropriate or incompatible with the educational integrity of the tournament or host institution from which the broadcast is originated.

Regional and sectional host tournament managers are authorized to refund fees if the station or Web site has a legitimate reason for not being able to broadcast or stream after they planned to do so and/or indicated to the manager in advance it will not be broadcasting or streaming if the school it is following is eliminated from the tournament. Host managers are expected to furnish free admission for two working persons.

11

A tape-delayed radio, television or cable broadcast, or Web cast is prohibited from airing/streaming until three hours after the start of the respective event being aired/streamed on a tape-delayed basis. Permission to air or stream any content delayed must come from When We Were Young Productions or the station/network with exclusive television rights.

Radio and Web sites approved by the WIAA to broadcast or stream Tournament Series events are prohibited from feeding its broadcast to any other station(s) or Web sites without additional rights fees being assessed.

Radio stations and Web sites may use the "Radio/Internet Broadcast Application" to submit requests for pre-State events to host managers. In addition, radio and Web sites are also required to apply for pre-State WIAA broadcast rights before accepting a feed or adding a link to a cybercast from another station or Web site and must adhere to all fees, rules, regulations and policies in this guide.

No taped-delayed broadcast or Web cast of any WIAA Tournament Series event is permitted during the exclusive live coverage of the WIAA State Tournament in the same sport.

The use of video, audio and tape exceeding two minutes by the originating station, publication or Web site for any purpose other than highlights on regularly scheduled news or sports broadcasts, or on a Web page is prohibited.

The following list of rules apply for commercial television stations and Web sites covering the WIAA State Tournament Series for newscast purposes:

1. There may not be live coverage of any kind during the contests. "Live coverage" is defined as any activity which occurs while a game or meet is in progress. Stations or Web sites may use a backdrop of live action for reports from a tournament facility provided there is no play-by-play commentary and the report is limited to regularly scheduled news or sports programs and are no more than two minutes of a program which is 30 minutes or less in length.

2. Use of film, video, audio, tape, etc., is limited to regularly scheduled news, sports programs or Web site, and use on such programs is limited to no more that two minutes of a program which is 30 minutes in length. Unless written approval is granted from the WIAA office, use of more than two minutes of film, video, audio, tape, etc., beyond five days from the last day of a tournament is prohibited outside of regularly scheduled news and sports broadcasts without written consent of the WIAA.

No rights fees will be required for schools wishing to air tape-delayed broadcast/streams on their school's educational channel on local cable systems or school's Web site.

The WIAA reserves the right to consider applications for radio and internet broadcast rights on an individual basis.

## Radio Priority Criteria

The WIAA will make every attempt to provide adequate broadcast facilities for all stations that are approved to broadcast WIAA State Tournament events. If demand for broadcasts exceed available accommodations, first consideration will be given according to the following criteria, as determined by the WIAA, in order:

1. The WIAA network (if applicable)
2. The WIAA network affiliate stations (if applicable)
3. To local stations of participating teams that have broadcast a participating team's games with regularity
4. To regional stations of participating teams that have broadcast a participating team's games periodically
5. To stations in the host community and area
6. Web site audio-only streaming (in above order)
7. Other

## Television Priority Criteria

The WIAA will make every attempt to provide adequate broadcast facilities for all stations that are approved to broadcast State Tournament events. If demand for broadcasts exceed available accommodations, first consideration will be given according to the following criteria, as determined by the WIAA, in order:

1. Television stations and WIAA networks/partners broadcasting or Web streaming live
2. Television stations and WIAA networks/partners broadcasting or Web streaming tape delayed
3. Local television stations taping for sports highlights within newscasts or video on Web site
4. Other media recording highlights for Web

# Internet Policies

The WIAA reserves the right to grant, issue and deny credentials to any internet service organizations based on the interpretation and intent of these policies determined by the WIAA. In cases deemed unique by the Association, these policies may be amended. The WIAA and its exclusive rights partners retain the rights to all video, audio, digital images or data taken at a WIAA Tournament Series event.

## Applying for Internet Media Credentials

Internet organizations meeting WIAA internet credential criteria may receive media credentials by making a formal request for credentials for each State Tournament event by submitting the WIAA "Credential Request Form" provided in a submittable form online located on the restricted area of the Media Center. The form is also provided in this manual and in the WIAA Media Guides.

The internet organization may be required to submit its internet address and certifiable traffic numbers to the WIAA prior to approval of credential requests.

Video streaming rights of WIAA regional, sectional and State Tournaments are operated by contractual partners of the WIAA. Audio streaming rights of WIAA State Tournaments are property of the WIAA.

To be considered for a WIAA media credential, internet organizations must be determined to be a legitimate news-gathering organization and meet the following criteria established by the WIAA:

1. High school sports content on the site is available without restrictions or subscriber/user fees.
2. The site has demonstrated a history and reputation for covering high school sports on a timely basis.
3. Content on the site is original and news-gathering in nature, updated on a daily basis in the form of stories, game stories and updates, comprehensive scores, standings, statistics or streaming.
4. Site is not a personal page or content and demographic audience is not a fan-based site of one school or a small number of schools.
5. Sites with content, forums or advertising (see "Advertising" section on page 15) not in compliance with the mission or media policies of WIAA, or associated with any promotion or link to material deemed inappropriate, as determined by the WIAA, will not be granted credentials.

## Applicable Regulations and Definitions

Internet and Web site are interchangeable terms for the purpose of WIAA regulations and definitions. A cybercast is defined in this section as a data, audio or video transmission or stream on the internet.

"Real-time," or tape-delayed account/transmission by audio streaming, video streaming, digital images or data, including game statistics and scores, is exclusive property of the WIAA and rights-granted entities. Any account/transmitting of real-time video, audio, digital images or data is prohibited on-site or off-site without consent of the WIAA. Web blogs not posting continuous play-by-play accounts of game or event action are permitted if determined by the WIAA to be in compliance with the mission and media policies of WIAA, and if they are not associated with any promotion, reference or link to material deemed inappropriate or not in the best interest of the WIAA.

The WIAA owns the rights to transmit, upload, stream or display content live during WIAA events and reserves the right to grant exclusive and nonexclusive rights or not to grant those rights on an event-by-event basis.

"Real-time" or "live" transmissions are defined as written, audio, video or digital image accounts of a WIAA State Tournament Series event, including data such as play-by-play, statistics and scores, while an event is in progress. Any "real-time," or delayed transmission by audio streaming, video streaming, digital images or data, including game statistics can not infringe on existing or duplicate content already provided by another party granted exclusive rights by the WIAA.

Web sites of traditional media (newspaper, radio, television) may be issued credentials, but are not allowed "real-time" or "live" transmission by audio streaming, video streaming, digital image or other data, including game play-by-play, statistics and scores without consent and rights granted by the WIAA.

Web sites given permission by the WIAA to transmit "real-time" or "live" audio or video streaming are subject to cybercast rights and line-usage fees and must adhere to all broadcast regulations, fees and advertising policies of the WIAA outlined in this guide.

Radio stations with Web sites will not be charged additional internet transmission fees if originating transmission is of similar nature and is not in competition with an exclusive rights-granted, fee-paying organization. For example, radio stations will not be charged an additional broadcast fee for streaming audio that originates for over-the-air broadcasts and is simultaneously streamed on the official flagship station's Web site only. Network stations or any other stations or Web sites may not link streamed audio unless those stations are also broadcasting the identical audio over-the-air. Any stations or Web sites not airing the broadcast of the network feed but links to the audio streaming of the event is subject to the cybercast rights fees. Requests for such permission must be indicated on the WIAA "Radio/Internet Broadcast Application." Any State Tournament cybercast permission must be clear through the WIAA. In addition, a radio station or Web site is required to apply and receive WIAA broadcast or cybercast rights approval before accepting a feed or adding a link to a cybercast from another station or Web site and must adhere to all rules, regulations and policies in this manual.

Newspapers transmitting "real-time" or "live" text, audio, image or video depicting action of State Tournament events is considered similar to that of a play-by-play radio or television broadcast and are subject to rights fees. Web blogs not posting continuous play-by-play accounts of game or event action are not subject to rights fees unless determined by the WIAA to be a live depiction of event action.

Also, any radio streaming "real-time" video are subject to exclusive rights agreements and cybercast fees. In addition, any television streaming "real-time" audio other than that of the fee-paying, rights-granted television broadcast is subject to the cybercast rights fees.

Credentials for approved organizations will be accommodated on a credential availability basis, but approved Web site credentials do not guarantee access to phone lines or seating. Due to space restrictions, Web site personnel and Web site photographers may not be granted credentials.

Traditional state, regional or national media sources (newspapers, radio or television) staffed by full-time employees for its internet operations may receive a maximum of two credentials with intent of reporting on WIAA State Tournament events.

Legitimate internet-only news organizations, as determined by the WIAA, with the intent of reporting on WIAA State Tournament events will be restricted and limited to two credentials due to space and facility restrictions. They are also subject to exclusive rights agreements, line-usage, and conceivably, cybercast rights fees and permissions.

All images captured at WIAA State Tournament Series are property of the WIAA. The WIAA allows legitimate media agencies to utilize digital images and photographs for the noncommercial purpose of reporting the events only. Photographs, digital images, written or audio transcripts, or video may not be sold without written consent from the WIAA.

# Advertising

The WIAA retains the right to require stations to submit in writing, upon WIAA request, any and all advertisements or sponsorships during a radio, television or internet broadcast of WIAA Tournament Series competition.

The WIAA reserves the right to approve or reject any sponsorship or advertisement for any product, service or opinion. For any part or segment of an entire broadcast/Webcast originating from the tournament site, the WIAA strictly prohibits the sponsorship and advertising of tobacco products, lottery/gambling, alcoholic beverages, mood-altering substances or lewd subject matter. Businesses with the primary purpose of selling any of these prohibited products are also prohibited from advertising on all broadcasts throughout the WIAA State Tournament Series. Businesses in which these products are available in a secondary capacity may advertise on WIAA Tournament broadcasts. However, the WIAA prohibits the referring to the sale of these prohibited products or establishments within the businesses where the primary purpose is the sale of prohibited products. Also prohibited from any WIAA Tournament broadcast is the reading of a list that includes prohibited advertisers or sponsors, including the name and/or locations of businesses, products or services.

Television, radio, print, Web sites or any other media are prohibited from referring, implying or using words/language that recognizes or identifies a business or organization as an "official sponsor" of any WIAA State Tournament Series event under the auspices of the WIAA. This includes any live broadcast or cybercast events; rebroadcast of events; any printed accounts; any commercials, advertisements or sponsorships; and any references made by writers and broadcasters during Tournament Series events. Television, radio, print, Web sites and any other media may use language that the tournament *coverage* or *broadcast* is sponsored by an advertiser or sponsor.

The WIAA reserves the right and responsibility to cancel any and all broadcast and broadcast rights for an event in progress and subsequent WIAA Tournament events for any station found to have violated the provisions of the WIAA's advertising policy.

15

STATE OF WISCONSIN:             CIRCUIT COURT             PORTAGE COUNTY

WISCONSIN INTERSCHOLASTIC ATHLETIC
ASSOCIATION,

        Plaintiff,                                    Case No. 08-CV-629

   and

AMERICAN-HIFI, INC., a/k/a When We Were
Young (WWWY), WKOW TELEVISION, INC.,
WAOW-WYOW TELEVISION, INC., WXOW-
WQOW TELEVISION, INC., FOX SPORTS NET
NORTH, LLC, VISUAL IMAGE PHOTOGRAPHY,
INC.,

        Plaintiffs pursuant to Wis. Stats.
        § 803.03,

   v.

GANNETT CO., INC. and WISCONSIN
NEWSPAPER ASSOCIATION, INC. (WNA),

        Defendants.

---

## NOTICE OF FILING OF REMOVAL

---

TO:    Bernadette A. Flatoff, Clerk
       Portage County Circuit Court
       1516 Church Street
       Stevens Point, WI 54481-3501

     Defendants Gannett Company, Inc. and Wisconsin Newspaper Association, Inc., by

counsel, in accordance with 28 U.S.C. § 1446(d), hereby gives notice to the Clerk of the Circuit

Court of Portage County, Wisconsin, and to Gerald M. O'Brien, as attorney for Plaintiff

Wisconsin Interscholastic Athletic Association, that on this 17th day of March, 2009, the

Defendants filed a Notice of Removal with the United States District Court for the Western

District of Wisconsin, and that this case has been removed to that court.  A true and correct copy


EXHIBIT
B

of the Notice of Removal is attached as Exhibit A.  The filing of the Notice of Removal, together with the filing of this Notice of Filing Notice of Removal, effects immediate removal of the action from this Court to the United States District Court for the Western District of Wisconsin.

Dated this 17th day of March, 2009.

Robert J. Dreps (State Bar No. 1006643)
Monica Santa Maria (State Bar No. 1056390)
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI  53701-2719
Phone:   608-257-3911
Fax:       608-257-0609
Email:    rdreps@gklaw.com

Attorneys for Defendants, Gannett Co., Inc. and
Wisconsin Newspaper Association, Inc.

3590736_1

2

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2009, I caused copies of the foregoing NOTICE OF

FILING NOTICE OF REMOVAL to be served on the following via first class mail, postage

prepaid:

Gerald M. O'Brien
Anderson O'Brien Bertz Skrenes & Golla
1257 Main Street
P.O. Box 228
Stevens Point, WI 54481-0228
**Attorneys for Plaintiff Wisconsin Interscholastic Athletic Association**

American-HIFI, Inc.
a/k/a When We Were Young (WWWY)
501 Moravian Valley Road
Waunakee, WI 53597
**Plaintiff**

WKOW Television, Inc.
5727 Tokay Blvd.
Madison, WI 53719
**Plaintiff**

WAOW-WYOW Television, Inc.
1908 Grand Avenue
Wausau, WI 54403
**Plaintiff**

WXOW-WQOW Television, Inc.
3705 County Highway 25
LaCrescent, MN 55947
**Plaintiff**

Fox Sports Net North LLC
10201 West Pico Blvd.
Building 103, Room 3152
Los Angeles, CA 90064
**Plaintiff**

Visual Image Photography, Inc.
W63 N582 Hanover Avenue
Cedarburg, WI 53012
**Plaintiff**

_____
Robert J. Dreps